## CALKINS *vs.* LONG.

At common law, a mortgage, being under seal, imported a consideration, and proof of a failure, or want, of consideration was not admissible to impeach it.

This rule of the common law has not been so far altered by the statute allowing a party bound by an instrument under seal to set up a want of consideration at law, (2 *R. S.* 406, § 77,) as to enable a mortgagor to apply to a court of equity to cancel the mortgage, upon the ground of a want, or a failure, of consideration.

The language of the statute seems to confine the change or modification of the common law to cases where an action is brought upon the instrument itself, or where the instrument is made the foundation of a set-off.

A trust created by a husband, for the support and maintenance of his wife who has left him in consequence of alleged ill treatment, and is living separate and apart from him, is a valid trust, and will uphold a mortgage given by the husband, to a trustee, to secure the payment of a specified sum annually for the wife's support.

Where such a mortgage is given by a husband, after a separation has taken place for alleged ill usage of the wife by the husband, and upon a claim of the wife, that she is entitled to have provision made for her maintenance, in consequence of such ill usage, the presumption is very strong that there were grounds upon which to found such a claim. The very fact of reluctantly giving a mortgage, under such circumstances, affords a strong presumption that there was a good consideration to uphold it, found in the ill treatment of the wife and her consequent claim for separate maintenance.

C. had lived on unpleasant terms with M. his wife, and she had quit him, in consequence of alleged ill treatment, and refused longer to live with him. C., in order to secure to his wife a separate maintenance, gave to L. a mortgage for $1700, conditioned to pay the latter $100 annually, so long as M. should remain the wife or widow of C. ; and if default should be made in·the payment of the said $100 annually, then and in that case the said sum of $1700 should be collected of the mortgagor by a sale of the mortgaged premises; and for that purpose a power of sale was contained in the mortgage. *Held* that such mortgage was not void upon grounds of public policy as interfering ,injuriously with the conjugal relations; and a complaint, filed by C., the mortgagor, praying that the mortgage might be given up and canceled, or that L. should cancel the same, and be prohibited from collecting it, was dismissed.

Where husband and wife agree to separate, a stipulation on the part of the husband to pay a specified sum annually, for the separate maintenance and support of the wife, is valid, and may be enforced.

If the separation be intended to be only temporary, then, if the husband offer to take back his wife, and to maintain her, it puts an end to the agreement, and a court of equity will not enforce the payment of the separate allowance to

Calkins *v.* Long.

the wife. But if the separation be intended to be permanent, that is, during life, then the offer of the husband to cohabit with his wife does not put an end to the contract for separate maintenance.

IN this case the plaintiff had lived on unpleasant terms with his wife, who is the sister of the defendant, and his wife had quit him in consequence of alleged ill treatment, and refused longer to live with the plaintiff. The plaintiff, in order to secure to her a separate maintenance, gave and executed to the defendant a mortgage for $1700 upon his lands in Chenango county, conditioned to pay the defendant $100 annually, so long as Martha, the plaintiff's wife, should remain the wife or widow of the plaintiff; and if default should be made in the payment of the said $100 annually, then and in that case the said sum of $1700 should be collected of the plaintiff by a sale of the mortgaged premises; and for that purpose a power of sale was contained in the mortgage. The condition of the mortgage was to pay the defendant $100 annually, so long as Martha, the plaintiff's wife, should remain the wife or widow of the plaintiff. There was nothing in the mortgage to show that the money was to be paid to the defendant for the use of the plaintiff's wife, or for her benefit. There was talk at the time of the giving of the mortgage, that the defendant should execute back to the plaintiff a writing agreeing to apply the $100 annually to the support of the plaintiff's wife Martha, but it was understood by the parties that the defendant's verbal agreement thus to apply the moneys was just as good, and by consent of parties this writing was waived, the plaintiff being willing to rely upon the defendant's verbal promise thus to apply the money; and upon these conditions the plaintiff executed the mortgage in question to the defendant. This suit was commenced by the plaintiff to procure the judgment of this court that the mortgage be given up to the plaintiff and be canceled, or that the defendant cancel the same, and be prohibited from collecting it. The plaintiff claimed and insisted that the mortgage could not be enforced; that there was no valid consideration to uphold it; secondly, that as this mortgage was based on a voluntary separation of husband and wife,

Calkins *v.* Long

and contemplated a continuance of that separation, and stood as a formidable obstacle in the way of a restitution of the conjugal rights of the plaintiff and his wife, the same was void upon grounds of public policy, as calculated to interfere improperly and injuriously with the marital relations.

*J. Benedict,* for the plaintiff.

*B. F. Rexford,* for the defendant.

MASON, J.   As to the first point, it should be borne in mind that the mortgage, being under seal, imports a consideration. (*Chitty on Cont.* 28, 7th *Am. ed.* 2 *Kent's Com.* 464, 6th *Am. ed.* 2 *Black. Com.* 446.   *Parker* v. *Parmele,* 20 *John.* 130.)   This mortgage, therefore, is founded upon a good and sufficient consideration, implied by the common law from the act of sealing and executing, and a mere failure or want of consideration was not admissible to impeach a sealed instrument, at common law.   (*Parker* v. *Parmele,* 20 *John.* 130, 134, *and cases above cited.*)   Chief Justice Spencer said, in the case of *Parker* v. *Parmele,* "It is not for me to question the wisdom of the common law in denying to a party, who has entered into an agreement under his hand and seal, a right to impeach it on the ground of a want of consideration.   It is sufficient that the law is so."

The question arises, then, has the common law been so far altered by our statute as to enable a mortgagor of real estate to apply to a court of equity to cancel the mortgage, upon the ground of a want, or a failure, of consideration.   The statute is as follows : "In every action upon a sealed instrument, and where a set-off is founded upon any sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner and to the same extent as if such instrument were not sealed." (2 *R. S.* 406, § 77.)   The language of this statute would seem to confine the change or modification of the common law to cases where there is an action brought upon the instrument itself, or

Calkins *v.* Long.

where the instrument is made the foundation of a set-off; and if the court were right in giving the statute this limited construction in the case of *Gilleland,· executor,* v. *Failing,* (5 *Denio,* 308,) then it does not lie with the plaintiff to say in this suit that the mortgage in question is without any consideration to support it. It is not necessary, however, to place the decision of this case upon that ground, for I am of opinion that there is a sufficient consideration to uphold the mortgage upon the facts established by the evidence in the case, if there is a valid trust created by this mortgage for the benefit of the wife. The husband is bound to support his wife; and the relation of husband and wife is *ipso facto* a letter of credit to the wife for necessaries suitable and proper to the sphere in which she moves; and it is well settled that if the husband and wife part by consent, and he secures to her a separate maintenance, suitable to his condition and circumstances in life, and pays it according to agreement, he is not answerable even for' necessaries. And the general reputation of the separation will be sufficient to protect the husband. (*Baker* v. *Barney,* 8 *John.* 73. *Fenner* v. *Lewis,* 10 *id.* 44. *Todd* v. *Stokes,* 2 *Salk.* 116. ·4 *B. & A.* 252.) If, however, they·separate without any provision being made for her maintenance, the husband is liable for necessaries furnished her, suitable to his condition in life. (*Lockwood* v. *Thomas,* 12 ·*John.* 248.) For aught this court can know, the husband may have deemed it to his pecuniary advantage to have the defendant receive $100 a year from him and apply it to the separate support and maintenance of his wife. The living separate is not the consideration for the paying the $100 a year for the support of the wife. The consideration is founded on the conjugal relation and the discharge of liability which the law attaches to such a· provision. Take the case under consideration. Suppose it is conceded that this is a valid mortgage and creates a valid trust by which the plaintiff is bound to pay $100 per year for the support of his wife, and that that sum shall be adjudged a proper sum for her separate maintenance, suitable to the condition and circumstances in life of the plaintiff; ·then the

plaintiff is released from all liability which the common law would otherwise attach to him, for necessaries furnished by others. So it will be seen that indemnity against the debts of the wife's contracting is found in the law itself, which follows as a consequence of separation and a suitable provision for separate maintenance, and which is as ample an indemnity as any bond of the trustee could be. I think that no one can doubt, in this case, that $100 a year, considering the limited means of the plaintiff, is all that a court of equity would adjudge as reasonable for a separate maintenance of the wife. There can be no doubt that this is a valid trust for the benefit of the wife. The case does not encounter even the limited difficulty imposed by the 64th section of our statute of uses and trusts. (1 *R. S.* 730, § 64.) And the 66th section of the same statute affords most ample protection to the husband against any misapplication of these moneys by the trustee. The statute is as follows: " No person who shall actually and in good faith pay a sum of money to a trustee which the trustee is authorized to receive, shall be responsible for the proper application of such money according to the trust. Nor shall any right or title derived by him from such trustee, in consideration of such payment, be impeached or called in question in consequence of any misapplication by the trustee, of the moneys paid." (1 *R. S.* 730, § 66.) Now if the husband has made a reasonable provision for the wife's separate maintenance, and that too after they had actually separated, then the husband is released from all liability for debts contracted by the wife after such separation, even though the trustee squander the moneys, or misapply them. (*Baker* v. *Barney,* 8 *John.* 73. 1 *R. S.* 730, § 66.) But again, this covenant being under seal, implies a consideration, and is therefore *prima facia* good. The burden of proving a want of consideration lies on those who assert it. Now it cannot be doubted for a moment, upon the evidence in this case, that the mortgage was given to provide a separate maintenance to the wife, and that such security for a separate maintenance was demanded after she had quit the plaintiff and refused longer to live with

him, in consequence of alleged ill treatment. And that this was made the ground of a distinct claim against the plaintiff by the defendant, who is the brother of the plaintiff's wife, and that threats of instituting coercive measures against the plaintiff to secure provision for her support were made by the defendant, unless the plaintiff would execute some instrument securing to her a reasonable support. In the case of *Clough* v. *Lambert*, (10 *Simons*, 174 ; 16 *Eng. Ch. Rep.* 175,) the deed recited that divers unhappy difficulties had subsisted, and did still subsist, between the husband and wife, and there was no evidence to show any acts of abuse of the wife that would in any manner justify a separation, and still the court upheld the deed; and they distinctly declare that the deed being under seal is *prima facie* good, and that the onus of impeachment lies on those who seek to avoid it. The court say, "for any thing that appears to the contrary, there may have been circumstances alluded to, under that recital, which would have justified the wife in applying to the ecclesiastical court for a divorce *a mensa et thoro*." So, in the case under consideration, the mortgage having been given after separation for alleged ill usage, and upon a claim of the wife, persisted in, that she was entitled to have provision made for her maintenance, in consequence of ill usage, the presumption becomes very strong that there were grounds upon which to found such a claim. The very fact of reluctantly giving this mortgage, under such circumstances, affords a strong presumption that there was a good consideration to uphold it, found in the ill treatment, and her consequent claim for separate maintenance.

The question arises then, does the evidence in this case overcome such presumption? I do not think it does. The evidence, in my opinion, is sufficient to justify a decree for separate maintenance, were not most of the acts of ill treatment pardoned by the forgiveness of the wife by her return to live with the plaintiff. But perhaps we should not be justified in finding that these subsequent acts of ill treatment are sufficient to revive the former acts of abuse, were not this view of the case aided by the presumption which is to be drawn from the

fact that the wife in this case had quit the plaintiff for alleged ill treatment and abuse, and refused longer to live with him, on that account, and demanded that some provision be made for her separate support, and that this mortgage was given in compliance with such demand. A condonation is a conditional forgiveness. It implies that the party will not put forth the bad conduct which is forgiven, if the husband shall continue ever afterward to treat her with conjugal kindness ; and a subsequent repetition of the personal abuse affords not a substantial cause of separation, but revives all those which existed prior to the condonation. (*Burr* v. *Burr*, 10 *Paige*, 20. *De Aguilar* v. *De Aguilar*, 1 *Hagg*. 733. *Beebee* v. *Beebee*, 1 *id.* 789.) And slight acts of abuse, and which of themselves would not sustain the bill, are a breach of this conditional reconciliation, and revive all antecedent acts of cruelty and misconduct. (10 *Paige*, 24.)

I propose to consider, in the second place, whether the mortgage in question is void upon grounds of public policy, for the reason that it interferes injuriously with the conjugal relations. I know that Lord Eldon and some of the most learned of the judges of Westminster Hall have thrown doubt upon the question, whether all agreements based on articles of separation between husband and wife ought not to be held as absolutely void, for the reason above stated. (*Lord St. John* v. *Lady St. John*, 11 *Ves*. 526.) And some of the judges in this state have declared similar sentiments. (*Beach* v. *Beach*, 2 *Hill*, 260, 264. *Mercein* v. *The People*, 25 *Wend*. 64, 77. *Carson* v. *Murray*, 3 *Paige*, 483, 500.) The law, however, has been too long settled, both in the courts of law and equity, in England and in this country, that a valid agreement for immediate separation between a husband and wife, and for a separate allowance for her support, may be made, through the medium of a trustee, to admit of a discussion of the soundness of the doctrine upon which the cases have proceeded. It was said by the learned Serj. Williams, in arguing the case of *Lord Radway et al.* v. *Chambers*, (*reported in* 2 *East*, 283,) that such covenants have long been established by repeated de-

cisions in cases where separation has actually taken place, and that all the arguments which can be urged against the soundness of the doctrine have been overruled more than a century ago; and the court held in that case that a covenant by a husband to pay a certain annual sum by way of separate maintenance for his wife, in their future separation, with the consent of such trustees, is valid in law; and although Lord Eldon, two years afterward, criticised the case with great severity, (11 *Ves.* 537,) he did not presume to overrule the case. He says, " but if dicta had followed dicta, or decision had followed decision, to the extent of settling the law, I cannot, upon any doubt of mine as to what ought originally to have been the decision, shake what is the settled law upon the subject." And the court of king's bench, as late as 1824, in the case of *Jee* v. *Thurlow*, (2 *B. & C. R.* 547; 9 *Eng. Com. Law,* 174,) held a deed legal and binding which, after reciting that differences existed, and that the husband and wife had agreed to live separate during her natural life, made a provision for the wife's support, and sustained an action of debt by the trustee, for arrears of the annuity. The strong dissent of Lord Eldon in this case of *St. John* v. *St. John,* (11 *Ves.* 537,) to the doctrine of that case, has led to frequent attempts, both at law and in equity, to overthrow the judgment in *Radway* v. *Chambers,* and also to question the legality of any contract between husband and wife, even through the medium of a trustee, for a separation of any kind, whether present or future. Those attempts were made in equity successively, before Sir William Grant, Sir Thomas Plumer, Sir John Leach, and before Lord Eldon himself, all of which failed, and Lord Eldon said, while speaking upon this subject in the case of *Westmeath* v. *Westmeath,* (1 *Jac. C. C.* 143,) " the conclusion to which I have come is, that though I might have decided differently if I had been one of the common law judges formerly, yet that it is impossible for me now to take upon myself to say that these deeds are not good at law." Repeated efforts were also made in the king's bench to overrule the case of *Radway* v. *Chambers;* and as late as the cases of *Jee* v. *Thurlow,* (2 *B. & C.* 547,) *Scholey* v.

Calkins v. Long.

*Goodman*, (1 *Carr. & P.* 36,) and *McDownell* v. *Murphy*, (2 *F. & Smith*, 279,) all of which have proved unavailing. In the former of these cases the court of king's bench held a deed legal and binding which recited that differences existed, and that the husband and wife had agreed to live separate during so much of her life as he should live, and which deed also made provision for her separate maintenance, and the court sustained an action of debt by the trustee, for arrears of an annuity.

Whatever may be said as to enforcing the agreement of separation, it is well settled, both in England and in this country, that the provision made for the support of the wife by the articles of separation will be enforced. Clancy says that if the "husband and wife agree to separate, and do separate accordingly, and if he have agreed to pay to her an allowance during such separation, equity will exact a due performance of the latter part of the contract, namely, the payment of the allowance, so long as the separation continues." In *Baker* v. *Cooper*, (7 *Serg. & Rawle*, 500,) the husband had obligated himself by bond to a trustee, on a separation from his wife, to pay to the trustee, in trust for his wife, $60 a year by half yearly payments during her life. These parties were subsequently divorced, and in an action brought for one of the installments, it was contended that the husband was released or discharged from his obligation by the divorce; but the court held otherwise, and gave judgment for the plaintiff. The supreme court of Connecticut, in the case of *Nichols* v. *Palmer*, (5 *Day*, 47,) decided that a provision in articles of separation, by which the husband bound himself to support the wife separately forever thereafter, was valid. The case was most elaborately considered. The supreme court of Massachusetts, in the case of *Page* v. *Trufant et al.* (2 *Mass. R.* 159,) held that a bond from the husband to the father of the wife for her maintenance, after a voluntary separation, was a valid contract, and sustained an action of debt upon the same. And the validity of these provisions for separate maintenance of the wife, where the separation has actually taken place, was recognized by this court in the case of *Baker* v. *Barney*, (8 *John.* 73; 2 *Kent's Com.* 161, 2d ed.,) and

Chancellor Walworth, in the case of *Carson* v. *Murray et al.* (3 *Paige,* 483,) held that an agreement made between husband and wife, through the medium of a trustee, for an immediate separation and for a separate allowance to the wife for her support, was a valid agreement. And it was said by Vice Chancellor McCoun, in the case of *Anderson* v. *Anderson,* (1 *Edw. Ch.* 380,) that this court will not interfere, by virtue of its general jurisdiction, to compel a husband and wife to live together when they have separated, nor force them to live apart when they are cohabiting. But if they agree to live separately, and do separate accordingly, and the husband stipulate to allow the wife a maintenance, equity, acting upon the contract, will enforce such contract against the husband, so long as the separation continues. The same doctrine was affirmed by Vice Chancellor Hoffman in the case of *Champlin* v. *Champlin,* (1 *Hoff. Ch. R.* 55.) And the supreme court of Pennsylvania, in the case of *Hutton* v. *Dewey,* (3 *Barr's R.* 100,) again adjudged that articles of separation which provide for immediate and actual separation of husband and wife are valid and effectual, both in law and equity.

I would say, therefore, with Chancellor Walworth in the case of *Carson* v. *Murray,* that I do not feel myself at liberty to follow the dissenting dicta of some of the judges of the present day as to the policy of supporting such agreements, in opposition to the law, as settled by our predecessors. The doctrine of *stare decisis et non quieta movere* must retain some respect in the courts of this country, or the innovating spirit of the age will render very insecure the rights of persons and property. It is said, however, that admitting this agreement to pay the $100 a year for the support of the plaintiff's wife to be valid when entered into and while the parties were separated, it has been terminated by the husband's ∙ offer to take back his wife and live with her.

The rule is this : if the separation be intended to be only temporary, then if the husband offer to take back his wife and to maintain her, it puts an end to the agreement, and a court of equity will not enforce the payment of the separate allow-

ance to the wife. (*Clancy*, 367.) But if the separation be intended to be permanent, that is, during life, then the offer of the husband to cohabit with his wife does not put an end to the contract for separate maintenance. (*Clancy*, 367. *Shelford on Marriage and Divorce*, 630. *Roper on Husband and Wife*, 319. 16 *Law Lib.* 186, *N. S.* *Atherly on Marriage Settlements*, 383. 2 *Cox's Ch. R.* 102. 2 *Vernon*, 386.)

The rule is laid down by Mr. Bell in his recent admirable treatise on the law of property as arising from the relation of husband and wife, page 541, (*Law Lib. N. S. vol.* 57, *p.* 341, *Phil. ed.*) as follows : "Where there is a deliberate agreement between the husband and wife to live apart forever, it is not in the power of the husband at his pleasure to put an end to this state of circumstances by requiring her to return and live with him, or thereby to suspend or extinguish his covenant to make an allowance for her separate maintenance ; for notwithstanding he should do so, an action would lie against him for performance of his covenant." "If, however, the separation is by the agreement contemplated to be only temporary, and the provision is limited to the duration of such temporary separation, the rule is otherwise." Applying this rule to the case under consideration, I do not see how the plaintiff's case *is* in any respect aided by his offer to take back his wife and provide for her in his family. The parties did not contemplate a temporary separation in the case under consideration, as is manifest from the provision which the plaintiff has made for the wife's separate support. The condition of his undertaking in that respect is, that he will pay $100 annually so long as the said Martha remains the wife or widow of the plaintiff. Such is the condition of the mortgage which the plaintiff seeks to be relieved from by this suit.

. We have considered this case upon the assumption that, to uphold this mortgage, there must be a valuable consideration appearing for the covenant of the husband to provide the wife with a separate maintenance. It is said, however, by Mr. Bell, in the work above referred to, (*Law Lib. N. S. vol.* 51, *p.* 336,) that such consideration is not required. In speaking

upon this subject he uses the following language : " A valuable
consideration for the covenant of the husband to give the wife
a separate maintenance is only necessary where the rights of
the husband's creditors come into question; for, as already
mentioned, where the interests of the creditors do not intervene,
collateral covenants by the husband in an agreement for sepa-
ration will receive effect, although the agreement be between
the husband and wife alone, and the covenants be voluntary on
his own part, and the enforcement should be asked in a suit by
the wife herself," citing *Fitzer* v. *Fitzer*, (2 *Atk.* 571,) *Guth* v.
*Guth*, (3 *Bro. C. C.* 617.)   He says, speaking of these cases,
" that Lord Rosslyn in *Leyard* v. *Johnson*, (3 *Vesey*, 361,) and
Lord Eldon in *St. John* v. *St. John*, (11 *Vesey*, 571,) ex-
pressed doubts of the propriety of the decision in *Guth* v.
*Guth*, but in *Ross* v. *Willoughby*, (10 *Price*, 2,) an objection
of the absence of indemnity to the husband, taken by a de-
murrer to a suit for arrears of an annuity to the wife during
separation, was overruled, and in *Clough* v. *Lambert*, (10
*Simons*, 174,) the objection of want of consideration, the
agreement being under seal, was disregarded ; and in *Framp-
ton* v. *Frampton*, (4 *Beavan*, 287,) where the suit was by a
wife to enforce a provision made for her by her husband with-
out any indemnity from her trustee against her debts, or other
consideration," Lord Langdale, after noticing the doubts ex-
pressed as to *Guth* v. *Guth*, observed that *Fitzer* v. *Fitzer*
had never been overruled, and no case had decided that with-
out the intervention of a trustee the husband might not volun-
tarily execute a deed or create a trust in favor of his wife, and
that such deed or trust might not be binding as against him,
even if the benefit of it should be dependent upon an existing
or continuing separation, which was the principal, if not the
only inducement for the whole arrangement." He adds : "As,
therefore, in other cases a voluntary trust by the husband in
favor of the wife will be effectual against him, so it will be in
this, and not the less so that by creating it the husband has
prevailed upon the wife to live apart from him and waive the
enforcement of her conjugal rights." He continues, at page

535, (57 *Law Lib.* 338, *N. S :*) "It has been already seen that the courts will enforce against the husband those covenants in a deed of separation between him and his wife alone, by which he makes a provision for her maintenance, although there may not be any consideration flowing from her.

It is obvious, therefore, that when trustees for the wife are parties to an agreement for separation, effect will be given to the covenant for maintenance, although there may not be any consideration flowing from them for the covenant, such as indemnity against the debts of the wife, for she, like any other *cestui que trust,* has a right to call upon the trustees to perform their trust; and should the trustees arbitrarily destroy the instrument, the court will set it up again ; or if they refuse to enforce the trust against the husband, a suit for that purpose by the wife by her next friend will be sustained." (*Cook* v. *Niggins,* 10 *Vesey,* 190. *Head* v. *Head,* 3 *Atk.* 547.)

It being extremely doubtful, to say the least, whether, upon authority, any consideration as between husband and wife need be shown to uphold the mortgage in question, and being of opinion that if such consideration were required, a sufficient one is shown in the evidence in this case, and being of opinion that we cannot set this mortgage aside as being against the policy of the law, without upsetting a long series of unbroken authority both in England and in this country, I do not see how we can do less than dismiss the complaint. There is no force in the objection raised that this mortgage cannot be upheld, for the reason that there were no articles of separation actually entered into between the plaintiff and his wife. This does not alter the case in the least ; for all the authorities agree that such articles themselves, voluntarily entered into, without the sanction of the court, will not be enforced, either in law or equity. It is said by Mr. *Bell,* in his commentaries above cited, (51 *Law Lib. p.* 332, *N. S.*) that "while it is unquestionable, upon the authority of the cases that have been cited and of the dicta of eminent judges in other cases, that a covenant between husband and wife to live separate from each other will not be enforced either at law or in equity, it is equally certain that collateral

or accessary covenants in a contract founded upon the motive of living separate, will receive effect both at law and in equity." If we are correct in the views above expressed, it follows that the plaintiff is not entitled to the relief demanded in the complaint, and that the same must be dismissed, with costs, which I hereby order and direct to be done.

[CHENANGO SPECIAL TERM, October 8, 1855. *Mason,* Justice. Affirmed at a general term of this court, in the sixth district, and subsequently by the court of appeals, on appeal by the plaintiff to that court.]