ABRAM S. MANN, AS TRUSTEE OF EMILY YALE, RESPONDENT, *v.* J. EARL HULBERT, APPELLANT, IMPLEADED WITH OTHERS.

*Agreement of a husband to support a wife living apart from him — when not void as against public policy — when mutual, the husband cannot revoke it without the consent of the wife.*

In October, 1872, a husband and wife, who had before that time separated and were then living apart, came to an agreement to live apart for the rest of their lives, the husband agreeing to provide for the support of the wife during her life, and she agreeing to release her dower in his lands and secure and indem- nify him against any charge or debts for her support further or different than as then agreed upon. A written agreement was then entered into between the husband and wife, and a trustee, embodying this agreement and a mort- gage was given by the husband upon lands belonging to him to the trustee as collateral security for the performance of the agreement. At the same time the wife joined in a deed conveying the lands of the husband, subject to the said mortgage, to a trustee, who was to hold the same in trust to convey as the husband might direct. The lands were subsequently conveyed to the husband subject to the said mortgage.

The parties lived apart until after the death of the husband. There being a failure to make provision for the wife prior to his death, the trustee, who had made advances to her, brought this action to enforce the mortgage.

*Held,* that the agreement, in so far as the provision sought to be enforced in this action was concerned, was not void as against public policy but was valid and enforceable.

That the fact that the husband had prior to his death proposed to his wife that she should return to and live with and be supported by him, and that she had refused to accept this offer, did not revoke the agreement or prevent the trustee from enforcing it.

APPEAL from a judgment of foreclosure, entered upon the report of a referee.

*W. A. Sutherland,* for the appellant.

*S. D. Bentley,* for the respondent.

SMITH, P. J.:

This is an action to foreclose a mortgage of real estate, executed as collaterial security for the performance of an agreement by a husband to provide for the support of his wife after voluntary separation.

The facts of the case, as stated by the referee and disclosed by the evidence, are as follows: On the 15th of July, 1872, after having been married for more than fifteen years and having, during that time, lived together as husband and wife, Justus Yale and Emily Yale separated, and after having lived apart for about two months and a-half, in the first days of October of that year, came to an agreement between themselves to live apart during the remainder of their lives, and that the said Justus should provide for the support of the said Emily and should secure her in such support during her lifetime, and that the said Emily should release her dower in the lands of which the said Justus was seized and should secure and indemnify him against any charge for her support further or differently than as then agreed, and to save him harmless from any debts of her contracting on his account. In pursuance of this agreement, the said Justus and Emily Yale, together with the plaintiff, Abram S. Mann, and others, executed the writing embodying the said agreement set out in the complaint, and as collaterial security for the faithful performance of the conditions thereof by the said Justus Yale, he, at the same time, executed and delivered to the said Mann, as trustee for said Emily Yale, the mortgage in suit. At the same time, or immediately thereafter, the said Justus Yale made executed and delivered to one Thomas B. Yale, a quit-claim deed of the lands described in the mortgage, in which deed the said Emily Yale joined, thereby releasing her inchoate right of dower in the lands. This deed contained the following provision: "All the premises above referred to, however, are subject to a mortgage bearing even date herewith, executed by the said Justus Yale to Abram S. Mann, trustee, and nothing herein contained shall impair or affect the security by the said mortgage created." At the same time, by a declaration of trust executed by said Thomas B. Yale to said

Justus Yale, bearing the same date as the mortgage, after reciting the conveyance to him of the lands mentioned in the deed, said Thomas B. Yale declared and agreed that he held and would hold said lands in trust for said Justus Yale, and would, on request, deed and convey the same to such person or persons as the said Justus should elect or direct. Said agreement, mortgage, deed and declaration of trust all bear date July 15, 1872, although they were, in fact, executed as late as, and after, October first of that year.

Afterwards, and on or about December 5, 1878, said Thomas B. Yale and said Justus Yale executed and delivered to the defendant, J. Earl Hulbert, a deed of the lands mentioned in said mortgage, which deed contained the following: "The said premises above mentioned and referred to are conveyed subject to two mortgages, one executed by said Justus Yale to Solomon Yeomans, dated April 1, 1848, upon which there remains unpaid the principal sum of $2,000, and one executed by the said Justus Yale to Abram S. Mann, as trustee, dated July 15, 1872, to secure the payment of an annuity as therein stated." All the foregoing instruments were duly acknowledged and recorded.

Subsequently to their separation in July, 1872, said Justus and Emily Yale at no time lived together or cohabited as husband and wife, although it appeared that in December, 1878, said Justus Yale proposed and offered to his wife that she should return to, and live with and be supported by him, at his house, which offer was refused by her. The husband, Justus Yale, paid all the installments provided for the support of the wife in said agreement and mortgage, up to and including the one payable on October 15, 1878, but nothing has been since paid thereon. Since that time the said trustee, plaintiff herein, has advanced some money for the support of said Emily Yale. Justus Yale, the husband, died in December, 1882, and before this suit was brought; the wife, Emily Yale, is still living. On these facts the referee found for the plaintiff that there was due him as trustee, under the mortgage in suit, the installments accrued subsequent to October 15, 1878, with interest on each, and that provision should also be made from the mortgaged premises, for payments to accrue so long as said Emily Yale should live. From the judgment of foreclosure and sale entered accordingly, the defendant now appeals.

It is insisted on behalf of the appellant that the agreement for separation was ineffectual to deprive either of the parties thereto of their common-law rights and obligations as husband and wife respectively; that it could be abrogated by either at will; that it was abrogated by the husband by his offer to the wife to return to his house and be supported by him there; that such an agreement will not be enforced by the courts, and that the mortgage in suit, given as security for its performance, must fall with it. In support of these propositions, our attention is called to certain English cases in which the ecclesiastical courts of that country refused to ratify or admit the binding effect of agreements for separation between husband and wife to the extent of depriving the husband of his marital rights. (*Mortimer* v. *Mortimer*, 2 Hag. Consist. R., 310; *Westmeath* v. *Westmeath*, 2 Hag. Ec. R. (ed. of 1830), supp. 1, etc.; *Smith* v. *Smith*, Id., supp. p. 44 (note); *Sullivan* v. *Sullivan*, 2 Addam's Ec. R., 299 [314]; *Warrender* v. *Warrender*, 2 Clark & F., 488.) We do not understand, however, that this point is presented by the case in hand, which is simply to enforce an agreement by the husband to a trustee for the payment of a certain sum annually towards the support of his wife while living apart from him and made subsequent to their separation, and based upon the good consideration of the release of the wife's dower rights and of the husband's common law liability for her maintenance. Such a case is very different from those above referred to, which were between the husband and wife directly for the restitution of marital rights, and in none of which does it appear that any property rights had been permanently affected. This distinction is admitted in the case of *Warrender* v. *Warrender* (*supra*), where Lord BROUGHAM said that an agreement for separation was of no legal force "save and except one only, the obligation contracted by the husband with trustees to pay certain sums to the wife, the *cestui que trust.*" However this may be, we consider it well settled in this State that covenants of a husband to support his wife separate and apart from him, when made to her trustee, the separation having, as in this case, already taken place, will be enforced by the courts; and that, whatever may be said or thought of the agreement to live separate and apart as a question of public policy, the covenant of the husband to pay a stipulated sum for the support of the wife, and the promise of

her trustee to indemnify the husband from liability for her debts are not illegal or contrary to public policy. It is this covenant, simply, on the part of the husband, which is sought to be enforced in the present suit. (*Calkins* v. *Long*, 22 Barb., 97; *Dupre* v. *Rein*, 7 Abb. N. C., 256; *Carson* v. *Murray*, 3 Paige, 486; *Allen* v. *Affleck*, 64 How. Pr., 380.)

Furthermore, the agreement in question was for a permanent separation, as is apparent from its terms, and could not be terminated by the action of the husband alone in proposing to his wife to return to his house and in offering to maintain her there. (*Calkins* v. *Long*, *supra*.) The agreement was a mutual and not a unilateral one, and the wife had perfect right to abide by its terms and to refuse to return to her husband (*Allen* v. *Affleck*, *supra*; *Wallace* v. *Bassett*, 41 Barb., 92); and the wife having parted with her dower right by joining in the deed made by her husband to Thomas B. Yale, the husband would have been estopped from seeking to abrogate the agreement after that act by the wife to her injury and to his advantage, and after it had, by the conveyance to the defendant become impossible to restore the parties to their former position. It does not appear that the husband at any time offered or attempted to do this, or offered to make up to his wife that with which she had parted under the agreement for separation, or that he even offered to reimburse the trustee for payments made by him for the wife on the husband's default. Nor does it appear that the abrogation of the agreement for separation now insisted upon by the present defendant, was ever sought to be enforced by the husband in his lifetime, or that the husband ever took any steps to have the mortgage in suit satisfied or canceled of record. On the contrary, the mortgage and accompanying instruments were permitted to remain in full force and undisturbed during his lifetime, and have not, for aught that appears, been attacked by his representatives or privies since his death; and as by its terms, the agreement provides for payment of the annuity for the use of the wife "during each year of her natural life" and "in each and every year so long as she shall live," liability to pay the same did not cease with the husband's death, and the land mortgaged remained as security for its payment until the lien should be terminated by the only limitation contemplated by the agreement, namely, the death of the wife.

The agreement was practically observed by both parties by their remaining separate and apart, which fact renders the decision in the case of *Zimmer* v. *Settle* (Gen. Term, Third Dept., May, 1884, not reported), which turned upon the reconciliation of the parties and the return of the wife to the husband's house, inapplicable to the case in hand.

The defendant challenges, as unsupported by evidence, the finding of fact that a part of the contract of separation was "that said Emily should release her dower in the lands of which said Justus was seized." We think, however, that this conclusion is properly deduced from the contemporaneous acts of the parties, the deed by which the wife released her dower in her husband's real estate having been executed by her simultaneously with said agreement and the mortgage in suit, and all of said instruments being parts of one and the same transaction.

As, in our opinion, the considerations above discussed are sufficient to entitle the plaintiff to the relief sought and to support the judgment rendered, it is unnecessary to pass upon the additional argument advanced by respondent that the appellant is estopped from questioning the validity of the mortgage in suit by reason of the fact that his deed is, by its terms, subject thereto.

It follows from the views above expressed, which cover all the points raised by the appellant which we consider material, that the judgment appealed from should be affirmed, with costs of this appeal against the defendant Hulbert personally.

BARKER and BRADLEY, JJ., concurred.

Judgment affirmed, with costs to be paid by the appellant.