(52 Misc. Rep. 37.)

### DENNISON v. DENNISON.

(Supreme Court, Special Term, Wayne County. November, 1906.)

**1. DIVORCE—GROUNDS—ABANDONMENT—ACTION FOR SEPARATION.**

Plaintiff and defendant, in anticipation of marriage, entered into a nuptial agreement by which the woman released the man from all claims or demands for her support or that of her child. The parties did not expect at the time to have a common home for the present, but to continue living separately. *Held*, that the wife could not after marriage maintain an action for separation on the ground of abandonment, until some effort was made on her part to require her husband to live with her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, § 114.]

**2. SAME—ANTENUPTIAL AGREEMENT—FAILURE TO SUPPORT.**

Where, before marriage, the parties entered into an agreement releasing the husband from all claims or demands for the support of the wife and her children, the agreement was void, as against public policy, and no defense to the wife's action for separation on the ground of defendant's neglect and refusal to support her on request.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, § 161.]

Action by Theresa Welch Dennison against Porter G. Dennison for separation. Judgment for plaintiff.

Murphy, Keenan & Murphy, for plaintiff.
Hamm & Knapp, for defendant.

DUNWELL, J. This action is brought by the wife for a separation from her husband, under section 1762 of the Code of Civil Procedure. The grounds alleged for the separation are abandonment under subdivision 3, and the neglect and refusal of the defendant to provide for his wife under subdivision 4 of that section.

The parties were married at the Village of Clyde, Wayne county, in this state, on the 26th day of August, 1902. The only issue of the marriage is a child born October 30, 1902. An instrument, of which the following is a copy, was executed immediately before the marriage, bearing the same date as the date of the marriage, viz.:

"Witnesseth: That the said Theresa Welch, party of the first part, for and in consideration of the party of the second part marrying her, doth covenant and agree to release said party of the second part from any and all claims or demands as a husband, such as support of herself and her children, and does release him from any and all claim of dower, or inchoate dower right and any and all claim or claims to his real and personal estate of whatsoever kind or name.

"It is hereby further mutually covenanted and agreed that the foregoing covenants and agreement is made and executed as an inducement and part of the contract of marriage of the parties hereto.

"In witness whereof, the parties hereto have hereunto set their hands and affixed their seals this 26th day of August, 1902.

"Signed and delivered in the presence of Mrs. George Mabie, witness.

"Miss T. Welch,

"Porter G. Dennison."

The defendant testified at the trial that he told the plaintiff that he would not marry her unless she signed the agreement. After the marriage the defendant called upon the plaintiff from time to time, up to about one week before the child was born. Since then he has wholly absented himself from her. The defendant testified that the plaintiff agreed to keep the marriage a secret. Evidently this marriage was the result of the stress of circumstances under which the parties labored at the time. The woman wished the marriage to be in existence when her child should be born; and the reluctance of the husband to marry was overcome by the agreement above recited, the supposition that the marriage would be kept secret, and, possibly, his liability in legal proceedings.

The evidence clearly indicates that the parties did not, at the time of the marriage, expect to have a common home for the present, but to continue living separately as before, she with her mother and he with his mother. Defendant's purpose was to keep the marriage secret during the lifetime of his mother. Under such circumstances the allegation of abandonment cannot be sustained. "Where the wife consents to the separation, there is no abandonment. It is only where the husband deserts the wife without her consent, and refuses to give her adequate and proper support, that an action for abandonment will lie. In the case at bar the parties have agreed to live apart, and consequently the separation is with the consent of the plaintiff, and apparently in accordance with her wishes. There can be no abandonment under such circumstances." Powers v. Powers, 33 App. Div. 126, 53 N. Y. Supp. 346. To the same effect is People v. Cullen, 153 N. Y. 638, 47 N. E. 894, 44 L. R. A. 420; Williams v. Williams, 130 N. Y. 193, 29 N. E. 98, 14 L. R. A. 220, 27 Am. St. Rep. 517; People v. Powers, 35 Misc. Rep. 775, 72 N. Y. Supp. 383.

In this case the intention of the parties, after marriage, to continue to live separately as they had done before marriage, prevents such living separately from becoming an abandonment by the husband of the wife in the sense in which the meaning of that term is employed in the statute, as understood and defined by the courts. Hence it must be held that the plaintiff has failed to establish a cause of action on the ground of abandonment. It may very well be that an antenuptial agreement that provides for the living separately of husband and wife would be deemed void as against public policy; but, until something has intervened, such as an effort on the part of the wife to live with the husband in a common home, and his refusal and his willful persistence in living separately from her thereafter, he cannot be deemed to have deserted her and abandoned her in the sense in which "abandonment" occurs in the statute. No attempt has been made on the part of the plaintiff in this case to require her husband to live with her; and,

in that respect, the circumstances have remained the same since the time of the marriage as they did before and at the time of making the antenuptial agreement.

The defendant also interposes the antenuptial agreement as a defense to the action of separation, on the ground that it releases him from all claims on the part of his wife for the support of herself and child. As has been seen, the instrument does provide that, "in consideration of the party of the second part marrying her," the party of the first part "doth covenant and agree to release said party of the second part from any and all claims or demands as a husband, such as support of herself and children," etc. If this instrument could be upheld, no question could arise but that the husband would be relieved from the support of his wife and child, and the instrument would be a complete defense to the charge of nonsupport. But, although valid antenuptial agreements may now be made by way of settlements upon the wife, by jointure in lieu of dower, and stipulated sums and property to be held by the wife as her separate property, in lieu of rights that she would acquire by the marriage in her husband's property, when the arrangement is open, understood, and for a fair consideration, the antenuptial agreement in question goes much further than this, and seeks to relieve the husband from all pecuniary marital obligations whatsoever. One of the fundamental obligations of marriage is that the wife and children shall be entitled to their support. The law attaches this obligation to the marriage relation as soon as it is formed, and it continues throughout its existence, unless something practically equivalent in lieu thereof is permitted by law to be substituted, such as agreements to live separately, with provisions for the wife's support.

Mr. Tiffany, in his recent work on Persons and Domestic Relations, at page 151, says, in respect to antenuptial contracts:

"There is no rule of law nor principle of public policy which prevents husband and wife from thus fixing, by an agreement before marriage, the rights which they shall have in each other's property, and relinquishing the interests which they would otherwise acquire therein by virtue of the marriage. Thus, they may relinquish their distributive shares in each other's estates, or the wife may bar her dower or the husband his curtesy. The husband may agree that his wife may retain all her own property to her sole and separate use, and he may settle his own property on her. And the devolution of the property of either or both may be regulated. These objects the law does not regard as contrary to public policy. As a rule, however, aside from the interest which the husband and wife shall take in each other's property, the rights and obligations arising from the marriage relation cannot be varied by agreement between husband and wife, or between both or either of them and third persons. A husband, for instance, by merely agreeing to pay his wife a stipulated allowance, cannot always relieve himself of his common-law liability to pay for her necessaries, if the allowance is insufficient. Nor can an arrangement whereby a married woman lives apart from her husband, and has a separate maintenance secured to her, change the legal character of her relations to her husband, so as to enable her to contract and be sued as a feme sole. Nor can a settlement whereby all the wife's property is conveyed in trust for her separate use, nor an express agreement that the husband shall not be liable, relieve him from his common-law liability for her antenuptial debts. And an antenuptial agreement by which a husband agreed not to change his domicile has been held void, as an attempt to abridge a legal right of the husband incident to the marriage status."

At page 169 he says:

"It may be laid down as a general rule that the courts will enforce covenants or promises in agreements of separation relating to the maintenance of the wife and other collateral engagements, provided the separation has actually taken place at the time of the agreement, or immediately follows the agreement. But an agreement having in view a separation in the future is altogether void, as against public policy, and it is immaterial whether they are made before or after marriage, because they give inducements to the parties not to perform 'duties in the fulfillment of which society has an interest.' 'The distinction,' it has been said, 'rests upon the following ground: An agreement for an immediate separation is made to meet a state of things which, however undesirable in itself, has in fact become inevitable. Still, that state of things is abnormal, and not to be contemplated beforehand. "It is forbidden to provide for the possible dissolution of the marriage contract, which the policy of the law is to preserve intact and inviolate." Or, in other words, to allow validity to provisions for a future separation would be to allow the parties, in effect, to make the contract of marriage determinable on conditions fixed beforehand by themselves.'"

In support of the text the author cites many authorities.

The principle to be derived from this statement of the law is that, while property rights by way of settlements may be arranged before marriage so as to vest in either party equivalents or substitutes for property interest that they would derive through the marriage contract, nevertheless, it is not permitted to make agreements in other respects that will supersede or avoid the obligations assumed as the result of marriage which are imposed by law. An agreement, having in view a future separation, merely at the election of the wife, was held to be void. People v. Murcein, 8 Paige, 68. Where husband and wife separate, without any provision being made for her maintenance, the husband is liable for necessaries furnished to her, suitable to his condition in life. Calkins v. Long, 22 Barb. 100, citing Lockwood v. Thomas, 12 Johns. 248.

In Pettit v. Pettit, 107 N. Y. 679, 14 N. E. 500, the court says:

"Where the separation exists as a fact, and is not produced or occasioned by the contract, the consideration of the husband's agreement to pay is his release from liability for the support of his wife."

The case of Carson v. Murray, 3 Paige, 483, and the note thereto, in the edition of the Lawyer's Co-Operative Publishing Company, states the rule where the law will enforce such agreements and the exceptions thereto. It is there stated that agreements for a present separation are valid; otherwise as to agreements for a future separation. That such agreements are of no effect unless the parties are separated when the agreement is entered into, or they separate afterwards in pursuance of the agreement. Agreements for a future separation are declared to be void as against the policy of the law.

It will be seen, from a review of these cases, that, where something has occurred in the course of the marriage relation that has made separation imperative, a provision for the wife's separate maintenance is enforceable. But, if a separation to take place in the future is contemplated, it is altogether void as against public policy. If the separation takes place by agreement of the parties, or because of such misconduct on the part of the husband as will justify her leaving him, he will be liable for her support; or, if they separate by agreement

without provision on the part of the husband for her support, he will remain liable therefor. In the present case the written instrument quoted provides that, in consideration of marriage, which is immediately to take place, an event still in the future, although it took place very soon after, the wife agreed to release the husband without other consideration than that of marriage, from all the duties of support and maintenance which the law imposed. I have discovered no principle of law upon which such an agreement can be upheld so as to relieve the husband from the legal duties imposed by the marriage. He sought by the contract to relieve himself from the support of his wife, yet he made no other adequate provision for her support. It was not the result of a separation that had taken place, nor the result of causes of separation that had yet arisen, and it violates one of the fundamental obligations of the law of marriage, viz., that a husband must support his wife and children, in the enforcement of which the public is interested as well as the plaintiff. It follows that the antenuptial agreement is void as against public policy and is of no force as a defense to the wife's action for a separation on the ground of defendant's neglect and refusal to support her.

If nothing had taken place since the marriage calling upon the husband to contribute to his wife's support, the antenuptial agreement might be considered a voluntary waiver upon her part for the time being at least, a sufficient objection to the bringing of the action on the ground of her acquiescence in her husband's neglect to support her; that is, she could hardly bring an action so long as she approved of his neglect to support her. But the testimony shows that, some months after the child was born, plaintiff went to the defendant and requested him to contribute something to her support, which he absolutely refused. This certainly was an abrogation by her of any waiver of a right of action that may have existed up to that time by reason of the antenuptial agreement. For a time the defendant paid $1.50 per week to the overseer of the poor for the care of the child. It seems that payment has been discontinued, apparently from the fact that the overseer has not required it.

It follows that the plaintiff is entitled to a judgment of permanent separation from the defendant, with a suitable allowance for her maintenance and support, including that of the child who lives with her, and which, on account of his tender age, is properly in her charge. The amount of the allowance must be regulated according to the station in life of the parties and the defendant's ability to pay. The testimony tends to show that he is only a clerk in the store or stores of which his older brother is manager, and that he has worked there for many years, receiving as compensation $1.50 per week over and above his board and clothes. The testimony also tends to show that his services, at a fair compensation, would be much greater, probably in the neighborhood of $12 to $15 per week; his present wages being under a family arrangement whereby he is assisting to establish the family business upon a prosperous foundation. Still, the allowance must be made reasonable so as to properly correspond with his earnings. It would seem that a provision of $4 per week for his wife and child would be reasonable, and the decree may so provide.

It would be desirable to grant the judgment without costs, if that could be done with fairness to the plaintiff; but she has been obliged to bring this action, and has incurred liability to her attorneys, and has no means of paying them unless it shall be out of the slender allowance she may receive under this judgment. Under the circumstances, costs not exceeding $40 are allowed to the plaintiff, besides taxable disbursements.

Ordered accordingly.