(94 Misc. Rep. 486)

## LANDES v. LANDES.

(Supreme Court, Special Term, New York County.   March, 1916.)

1. HUSBAND AND WIFE ☞279(6)—SEPARATION AGREEMENT—EFFECT OF BREACH.

Where a separation agreement provides for a division of property interests and for weekly payments of $40 by the husband for the support of the wife and their son, and education of the son, which the husband complied with for a year and eight months, the fact that one week he paid only $15, expressing his regret for inability to send more, and hoping that he would be able to do better soon, is not sufficient, in the absence of a surrender of the property assigned to the wife by the agreement, to authorize her to repudiate the agreement and recover provision for her support in the form of alimony in any action to dissolve or modify the marital status.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1054; Dec. Dig. ☞279(6).]

2. HUSBAND AND WIFE ☞278(5)—SEPARATION AGREEMENT—CONSIDERATION.

Neither at common law nor under Domestic Relations Law (Consol. Laws, c. 14) § 51, providing that a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife, can the fact of separation or a covenant therefor be relied on to support any part of the consideration of a separation settlement, or a separation agreement.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1052; Dec. Dig. ☞278(5).]

3. HUSBAND AND WIFE ☞283(2)—ACTION FOR SEPARATION—EFFECT OF SEPARATION AGREEMENT.

A separation agreement between husband and wife, providing for a division of their property and weekly payment by the husband, though a valid subsisting agreement, so far as its pecuniary features are concerned, is not a bar to an action for separation.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1063; Dec. Dig. ☞283(2).]

Action by Augusta Landes against Leonard Landes.   On motion to dismiss complaint.   Denied.

Order affirmed in 159 N. Y. Supp. 230.

Chas. Goldzier, of New York City, for the motion.
Harold M. Phillips, of New York City, opposed.

HOTCHKISS, J.   This motion involves the sufficiency of the complaint, which is for separation on the ground of cruelty.   As a pleading the complaint is subject to criticism on numerous grounds, but as these questions are not raised I shall assume the allegations to be sufficient with respect thereto.   The alleged acts of cruelty were committed in 1908, and "continued" up to September, 1913, when the parties entered into a so-called separation agreement.   This agreement recites that marital differences between the parties had existed for a long time; that they had separated and agreed as follows:   (1) Defendant agreed to pay plaintiff $40 per week for the support of herself and for the support and education of their son; (2) the plaintiff was permitted to "take with her all the furniture of the two upper floors" of the premises No. 140 East Twenty-Second street, "it being

mutually agreed that the said furniture is the property of" the defendant, "subject to a life use of" the plaintiff, "and that none of the said furniture shall be sold or otherwise disposed of under any circumstances without the written consent of" the defendant; (3) that the defendant should have the use and occupation of the premises No. 140 East Twenty-Second street "during his lifetime and so long as the premises are owned by the parties hereto," and that the plaintiff should make no claim for rent, use, or occupation of said premises, the defendant further agreeing "to pay all carrying charges, reasonable repairs, interest on mortgages, and taxes."

[1] The agreement on the part of the plaintiff to indemnify the defendant against bills contracted by her was in the form of a provision to the effect that, in the event he should be compelled to pay any such bills, the amount thereof might be deducted from the weekly payments. It was also provided that neither of the parties would "interfere with the rights, privileges, doings, or actions of each other, and will not interfere in any way, manner, or shape with each other, and each of the parties is at liberty to act and do as they see fit," and for a breach of this covenant by the plaintiff it was provided that the defendant might at his option rescind the agreement. Finally it was provided that "neither of the parties hereto shall compel or endeavor to compel the other party to cohabit or dwell with him or her by any legal or other proceeding for the restitution of marital rights or otherwise howsoever." It is alleged that the defendant paid the weekly sum of $40 until May 7, 1915, on which day he sent plaintiff a check for $40, which was returned to her from the bank, indorsed "Payment stopped." It is further alleged that on the same day defendant sent plaintiff $15, with a letter expressing regret for his inability to send more, and that he hoped he would be able to do better soon. The summons is dated May 14, 1915, and the complaint was verified the same day. The foregoing is the only breach of the agreement alleged. It is not alleged that defendant has repudiated the agreement, nor is there any allegation other than those hereinbefore referred to with respect to the furniture or to the real property referred to in the agreement. There is no tender or offer by plaintiff to return the furniture. The case rests on the bald allegation that defendant had defaulted in part upon a single weekly payment on an occasion less than 10 days before the action was brought. Shortly after the action was commenced plaintiff secured an order for temporary alimony, which, by a vote of three to two, was reversed by the Appellate Division, and the motion for alimony denied on the authority of Powers v. Powers, 33 App. Div. 126, 53 N. Y. Supp. 346, Grube v. Grube, 65 App. Div. 239, 72 N. Y. Supp. 529, and Randolph v. Field, 165 App. Div. 279, 150 N. Y. Supp. 822. No opinion was written by the judges who concurred for reversal. In their memorandum of dissent, Ingraham, P. J., and Scott, J., placed it upon the ground that, "the defendant having failed to live up to his agreement, the plaintiff was then entitled to maintain an action for a separation and to apply for alimony." Landes v. Landes, 170 App. Div. 898, 154 N. Y. Supp. 1129.

Inasmuch as I was one of the majority who voted for the reversal

of the order above referred to, I may be permitted to speak with some confidence of the reasoning which induced the decision at least on the part of one member of the court. The agreement in question is something more than a mere separation agreement containing executory promises only. It partakes more of the nature of a separation settlement, inasmuch as there was a division and an allotment of property and property interests between the parties, in addition to the defendant's covenant to make the weekly payments. The distinction between simple separation agreements with pecuniary provisions for support of an executory nature, and separation settlements, is illustrated by a number of cases, many of which will be found digested in a note to Dennis v. Perkins, 43 L. R. A. (N. S.) 1220 et seq. I will refer to but one of the reported cases in this state—Smith v. Terry, 38 App. Div. 394, 56 N. Y. Supp. 447, affirmed 166 N. Y. 632, 60 N. E. 1120. In the course of his opinion in that case Mr. Justice Cullen said (page 396 of 38 App. Div., page 448 of 56 N. Y. Supp):

"If the instrument executed between the parties were a mere agreement for separation the decision of the trial court would be correct. But the instrument was much more; it was a conveyance of real estate on certain well-defined and valid trusts. Ordinarily agreements for separation between husband and wife contain a covenant on the part of the husband for the future payment at definite intervals of sums for the support of the wife, and a covenant on the part of the trustee to indemnify the husband against liability for future support. Such an agreement is essentially executory, and a failure of consideration will relieve a party thereto from his obligation to perform. But this principle does not apply to an executed agreement."

But even assuming that the instrument in question is nothing more than a separation agreement, containing nothing but executory promises by the defendant for the support and maintenance of the plaintiff and her child, I am still of the opinion that no substantial breach is alleged sufficient to justify its repudiation by plaintiff. I shall not attempt to review the question at length. Suffice it to say that in my opinion the authorities are ample to sustain the proposition that so far as the question of breach depends upon an issue of performance, until there has been such substantial failure to perform as amounts to "a failure of consideration" or there has been a repudiation of the agreement or other acts amounting to a practical rescission on the part of the husband, the wife must look to the agreement, and cannot ignore it and obtain provision for her support in the form of alimony in any action she may bring to dissolve or modify the marital status. See Galusha v. Galusha, 116 N. Y. 635, 643, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; Galusha v. Galusha, 138 N. Y. 272, 33 N. E. 1062; Johnson v. Johnson, 206 N. Y. 561, 100 N. E. 408, Ann. Cas. 1914B, 407.

Furthermore, in the case of a separation settlement it is at least a proposition of doubtful soundness that a wife may, except perhaps under special and peculiar circumstances, rely upon a breach of the husband's executory promises, and secure alimony, while retaining the executed portion of the consideration received in pursuance of the settlement—in short to retain and reject what she pleases. See Johnson v. Johnson, supra. To afford the wife such relief would certainly

be an innovation in the application of the fundamental rules of equity by which the pecuniary features of separation contracts are governed. For the foregoing reasons I think the failure of this defendant to pay in full one week's installment was in the nature of a trifling breach (see per Jessel, M. R., Besant v. Wood, post), and was insufficient either as evidence of repudiation, failure of consideration, or of any state of facts which would justify the wife in disregarding the agreement.

[2] Assuming, therefore, that the provisions for support are still binding, is the agreement as to separation per se a bar to this action? It is unnecessary to cite authorities to show that in this state an agreement to separate in futuro is void. But in holding that after a separation has taken place, or where immediate separation is contemplated, and in fact occurs, a valid agreement may be made between husband and wife for the future support of the wife (see Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453, supra; Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. [N. S.] 710), I find that the courts have so often used language which fails to discriminate between the agreement to support and the agreement to continue to live separately (e. g., vide per Follett, C. J., Duryea v. Bliven, 122 N. Y. 567, 570, 25 N. E. 908) that uncertainty has arisen as to whether the law in this state permits the agreement to continue to live separately to be considered as in and of itself a valid consideration, or such as may in any measure support a pecuniary obligation assumed by either spouse. It would be idle to attempt to examine the question in the light of the numerous decisions of our state courts, for almost without exception they will be found to have harked back and to have adopted one side or the other of the question as expounded in the contemporaneous and divergent decisions of the ecclesiastical court and the courts of common law and of equity in England. In many cases there has apparently been no attempt to discriminate between the decisions in these several jurisdictions. The development of the English law has been peculiarly affected by the jurisdictional division between the ecclesiastical courts on the one hand and the law and equity courts on the other. The line of cleavage split separation agreements into two parts, provisions for separation and provisions for maintenance. The ecclesiastical courts, which had exclusive jurisdiction of matrimonial actions and questions affecting the marital status from the earliest times up to their abolition by the act of 1857, consistently held separation agreements to be an absolute nullity, but of necessity left it to the law and equity courts to give such effect to maintenance provisions as they saw fit. Accordingly, a separation agreement was held no bar to an action for restitution of conjugal rights, nor, a fortiori, to an action for divorce or for annulment. Beeby v. Beeby, 3 Eng. Eccl. Rep. 338 (1798); Mortimer v. Mortimer, 2 Hagg. Con. 310 (1820); Westmeath v. Westmeath, 2 Hagg. Eccl. Supp. 1 (1826).

The law and equity courts, in considering separation agreements, faced numerous complications: (a) They must not violate the public policy protective of the marital relation; (b) they were bound by the

common-law doctrine of coverture; (c) they must not encroach upon ecclesiastical jurisdiction; and hence (d) they were forced to support such agreements, if at all, upon considerations affecting property rights to the exclusion of the provisions concerning the separation, although on general principles the agreement might well be regarded as indivisible. Apparently the civil courts at first avoided the difficulty by acceding to the claim of the ecclesiastical court to exclusive jurisdiction over all causes which related to marriage, whether collaterally or directly. By the early part of the eighteenth century, however, it had become established that the civil courts had jurisdiction over separation agreements so far as they affected property rights, when made between a husband and a trustee for the wife and providing for separate maintenance of the wife. The four problems above referred to, viz., public policy, coverture, jurisdiction and indivisibility of the contract, were met as follows: (a) It was held that public policy was not violated where the agreement was made in contemplation of immediate separation, which separation in fact ensued, or after separation had actually occurred and still continued; and the reason assigned was that in such cases the agreement was not conducive to separation, separation being merely the motive and not the consideration. (b) The doctrine of coverture was avoided by upholding only those agreements which were made between the husband and a trustee for the wife. (c) The conflict as to jurisdiction was adjusted by confining judgments and decrees to the property features of the agreement, refusing accordingly to enjoin an action for restitution of conjugal rights because of a separation agreement, or to decree specific performance upon a bill, so far as it relied upon an agreement to live separately. (d) The indivisibility of the agreement was summarily met by dividing it, on reasoning that was thereafter repeatedly disapproved, although the cases themselves were reluctantly acknowledged as binding. The reasoning was that separation in itself was not a part of the contract; that as matter of fact separation was a mere condition out of which the agreement arose; that although as a matter of law the provision for separation was invalid, the courts would, in certain circumstances, give effect to the valid part, i. e., maintenance, while ignoring the invalid part, separation. Having divided the agreement, a consideration other than separation was requisite to uphold it; the mere duty to support the wife being insufficient to sustain the husband's agreement to pay a fixed sum.

The chancery case of Frampton v. Frampton, 4 Beav. 287 (1841), has been cited as holding that no consideration was necessary to support the agreement, but in that case the provision for maintenance was by an executed assignment, and, in spite of scattering dicta and one or two unsatisfactorily reported cases, it may fairly be said to have been the law of England, throughout the eighteenth century and well into the nineteenth, that a consideration other than separation was required, and such consideration was found in the customary provision whereby the trustees indemnified the husband against the debts of the wife. The following cases bear out the foregoing statements: In equity—Angier v. Angier, Prec. Ch. 496 (1718); Wilkes v. Wilkes,

2 Dic. 791 (1757); St. John v. St. John, 11 Ves. 526 (1805); Worrall v. Jacob, 3 Mer. 250 (1817); Warrender v. Warrender, 2 C. & Fin. 488 (1835). In law—Jee v. Thurlow, 2 B. & C. 547 (1824); Wilson v. Mushett, 3 Barn. & Ad. 743 (1832); Waite v. Jones, 1 Bing. N. C. 656 (1835), affirmed in House of Lords 4 M. & G. 1104 (1842). No substantial change occurred thereafter until the case of Wilson v. Wilson, 1 H. L. C. 538 (1848). In that case equity decreed the specific performance of a provision in a separation settlement for the execution of a separation deed, one of the clauses of the agreement being that the parties should live separate. It may be doubted whether the decision in this case, so far as it affected the separation side of the agreement, was not inadvertent (see same case, 5 H. L. Cas. 40); but, however that may be, it was accepted as the foundation for a new doctrine in equity, viz., that effect should be given to the separation side of separation agreements even to the extent of enjoining matrimonial actions in the ecclesiastical courts where such actions violated the terms of the agreement. Accordingly thereafter chancery consistently enjoined suits for the restriction of conjugal rights when valid separation agreements were outstanding.

This advance involved a change of judicial attitude towards each of the four problems previously mentioned: (a) As to public policy, it was considered that the ecclesiastical and ultra religious view of marriage, according to which separation was illegal and cohabitation an enforceable duty, had since the Reformation gradually given way to the common-law view that voluntary separation, while not to be encouraged, was not forbidden by any sound public policy, and that separation under mutual agreement was to be preferred to the scandal of divorce actions. (b) As to coverture, it was argued that as a wife was allowed to sue in her own name for divorce she should be allowed to compromise such a suit, and if allowed to compromise a suit begun, she should be allowed to compromise by agreement before suit. (c) As to jurisdiction, it was argued that an injunction against a suit in the Ecclesiastical Court did not encroach upon that court's jurisdiction as to marital status for the reason that equity's decrees were directed to the person and did not purport to determine the status. (d) As to the indivisibility of the agreement, this line of cases abolished the difficulty by taking cognizance of both the separation and the maintenance sides of the agreement. I refer to the following cases: Hunt v. Hunt, 4 De G., F. & J. 221 (1862); Besant v. Wood, 12 Ch. D. 605 (1879); Hart v. Hart, 18 Ch. D. 670 (1881); Sweet v. Sweet, 1 Q. B. 12 (1895).

In 1857 Parliament transferred the ecclesiastical jurisdiction over matrimonial causes in the Court for Divorce and Matrimonial Causes (20 & 21 Vict. c. 85), but the new tribunal considered itself bound to follow ecclesiastical practice as to separation agreements, so no change in the law was effected. Spering v. Spering, 3 Sw. & Tr. 211 (1863). In 1872 the Judicature Act (36 & 37 Vict. c. 66) was enacted, whereby the Divorce Court and the other superior courts were merged into the High Court of Justice. Under this act matters of equity, on which an injunction might have issued from chancery against the prosecu-

tion of a suit in the old Divorce Court, might now be relied on by way of defense in the matrimonial action itself. Thus the new Probate and Divorce Division became obligated to follow equity in recognizing the validity of separation agreements. Marshall v. Marshall, 5 Prob. Div. 19 (1879); Clark v. Clark, 10 Prob. Div. 188 (1885); Aldridge v. Aldridge, 13 Prob. Div. 210 (1888). It is now the settled law of England that a separation agreement, when made in contemplation of immediate separation, which in fact takes place, or after separation has occurred, and still continues, is valid and enforceable both as to separation and as to maintenance, in law (McGregor v. McGregor, 21 Q. B. Div. 424 [1888]) and equity and in the Probate and Divorce Division.

Turning to the decisions in this state, I find that the courts have frequently pointed out the distinction between the provisions for maintenance and those for separation; but, having regard for the history and gradual development of our law on the subject of the pecuniary features of separation agreements, I find no case of controlling authority on the precise question involved here. In Anderson v. Anderson, 1 Edw. Ch. 380 (1832), it was held by Vice Chancellor McCoun that a deed of separation was no bar to a suit for divorce, either previous or subsequent to the act alleged (see also Randolph v. Field, supra), nor could it be pleaded in a suit for restitution of conjugal rights, even though the settlement contained a covenant not to bring such a suit—the decision thus following the English ecclesiastical authorities of that date. In Rogers v. Rogers, 4 Paige, 516, 27 Am. Dec. 84 (1834), the wife filed a bill for separation. Pending the action a separation agreement was entered into whereby the wife agreed to abandon the suit and the husband agreed through a trustee to provide separate maintenance. On the wife's continuing the action contrary to the agreement, and moving for temporary alimony, it was held that the agreement was no bar—for two reasons: (a) The agreement was invalid so far as it related to separation; and (b) that the husband's bond was voided by a failure to comply with conditions. In Beach v. Beach, 2 Hill, 260, 38 Am. Dec. 584 (1842), there was a separation agreement under which the wife was to be allowed to prosecute suits in her own name. She brought this suit for slander, and the defendant pleaded a release by the husband. The plea was held good on the ground that the parties could not by agreement alter the wife's marital status, and that separation agreements were void except as to maintenance provisions, based on a consideration to the husband, such as indemnity. In Calkins v. Long, 22 Barb. 97 (1855), the court supported a maintenance provision, but in a careful opinion pointed out that the collateral or maintenance side only of the agreement was valid and enforceable, the provisions as to living apart being void. In Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453, it was held that a separation agreement, so far as the husband's covenants for support and maintenance were concerned, survived a judgment for divorce obtained by the wife for the husband's subsequent adultery. In Clark v. Fosdick, 118 N. Y. 7, 22 N. E. 1111, 6 L. R. A. 132, 16 Am. St. Rep. 733, the court, in

the course of its opinion, per Potter, J., speaking of separation agreements, said (page 16 of 118 N. Y., page 1114 of 22 N. E. [6 L. R. A. 132, 16 Am. St. Rep. 733]):

"But they do not supersede or render inoperative other duties and obligations imposed by law upon husband and wife toward each other and toward their children. They are still husband and wife, but living apart from each other and bound to observe all the other marital duties resting upon them as husband and wife and parents, not provided for in the agreement of separation. Neither of them can marry not commit adultery, without incurring the consequences and the penalty prescribed by law to husbands and wives who commit those offenses. Hence we find numerous decisions of the courts in nearly all civilized countries, holding that either husband or wife may, notwithstanding the existence of such agreements between them, maintain against the other the ordinary action for divorce, limited or absolute, according to the ground and the jurisdiction, and whether the ground therefor accrued before or after such agreement was entered into"—citing cases.

In the light of the foregoing I feel justified in saying that the common law of this state always has been, and it still is, that the fact of separation, or a covenant therefor, cannot be relied on to support any part of the consideration of a separation settlement or a separation agreement. It also seems that such is the statute law of the state. Chapter 594 of the Laws of 1892 amended the law relating to the rights and liabilities of married women, among other things, by adding the following proviso:

"But nothing herein contained shall be construed to authorize the husband and wife to enter into any contract by which the marriage relation shall be altered or dissolved or to relieve the husband from his liability to support his wife."

When carried into the Domestic Relations Law in 1896 (see chapter 272), the foregoing provision was incorporated into section 21 in the following words:

"But a husband and wife cannot contract to *alter* or dissolve the marriage or to relieve the husband from his liability to support his wife."

And in this form it now appears in section 51 of the Domestic Relations Law.

[3] I conclude, therefore, that the agreement in question, although a valid subsisting agreement, so far as its pecuniary features are concerned, is not a bar to the maintenance of this action.

Motion denied with $10 costs.