67b 487
16ap615

## ALICE S. MAGEE *vs.* GEORGE J. MAGEE, executor, &c., and others.

M. and his wife, the plaintiff, who had separated and were living apart at the time, a suit brought by the wife for a limited divorce being then pending, settled such suit, in October, 1871; and on the 27th of that month, they executed an instrument by which it was agreed that the plaintiff should live apart from M., and the latter was to pay her $5,000 yearly, and if she kept house, $500 more. It was payable at a savings bank in S., in equal monthly payments, to the credit of the wife, so long as she should remain the wife of M. or continue his widow, &c. And for *securing* the prompt and regular payment of such annuity, M. covenanted and agreed that he would make and execute a valid will, and keep the same at all times in force, in and by which he should provide for the *fulfilment*, on his part, of said instrument, and make the payments, therein provided for, a lien and charge upon his estate. The wife covenanted and agreed that she would accept and receive the provision made for her support, in lieu of all claim, charge or incumbrance, in any way or manner, or *at any time thereafter*, upon M. or his representatives, or upon his estate. M. had, on the 9th of November, 1870, executed a will by which he directed his executors to pay $2,500 to his wife, during her life, or until she should again marry. On the 30th of October, 1871, he added a codicil thereto, by which the said annuity to the plaintiff was revoked; and it was provided : "And I hereby give and bequeath to my said wife the sum of $5,000 yearly, *to be paid* to her, each and every year, in monthly instalments, so long as she shall continue my widow." M. died in April, 1873. The principal question was, whether the plaintiff was entitled to receive, out of M.'s estate, $5,000 a year during her life or widowhood, or $10,000.

*Held,* 1. That the agreement of separation was valid and binding, and such an one as the parties might lawfully enter into; they being actually separated, and living apart, at the time it was made.

2. That the covenant of M. to pay $500 a year if the plaintiff should keep a house on her own account, and occupy the same as her residence, was contingent; that she must rent and keep a house before the covenant would become operative, or the $500 payable.

3. But that the covenant to pay an annuity of $5,000 was not contingent; that it was absolute, and the liability to pay was fixed and settled, the moment the agreement was executed. That M. was under an operative covenant, and he and his estate were chargeable with the observance thereof; which was liable to be defeated only by her death, subsequent marriage, &c.

4. That beyond this covenant to pay the annuity of $5,000, M. was bound to *secure* the payment thereof, by a testamentary provision for the "fulfilment" of such covenant by him.

5. That in the absence of any proof showing an intent on the part of the testator to be more liberal and generous with the wife, by donating an additional sum, than the terms of the agreement called for, the presumption

Magee *v.* Magee.

was that the giving of the annuity of $5,000 named in the codicil was in-tended as a compliance with the agreement of the testator to provide for that sum; that it was inserted in the will as an intended fulfilment of such agree-ment. And that it should be held a satisfaction of the agreement, *pro tanto,* if availed of by the wife.

6. That the plaintiff was entitled to receive only the annuity of $5,000; and to enforce the $500 rental covenant whenever she should bring herself within its terms.

When the language of a codicil is clear; when no question arises as to the phraseology used; and no uncertain or ambiguous words are employed, the declarations of the testator to the scrivener who drew the codicil are inad-missible to establish the *intention* of the testator, at the time he executed the instrument.

But evidence of the facts and circumstances under which the codicil was exe-cuted may be received, and may be looked into in determining what infer-ences and presumptions arise.

THE plaintiff was married on the 26th day of June, 1867, at the city of Syracuse, to John Magee, and they lived together some two or three years and sep-arated, she alleging his cruel treatment as the cause; and she brought a suit for a limited divorce, in this court, which was pending and about to be tried, in Oc-tober, 1871. The action was settled by the parties and with the assent of the plaintiff's father and trustee, and the instrument of October, 1871, evidences the terms of settlement;—she was to live apart from her husband Magee, and he was to pay her $5,000; and if she kept house, $500 more. It was made payable at the Syracuse Saving Bank in Syracuse, in monthly payments, to the credit of Alice S. Magee.

The article of separation bears date 27th of October, 1871, and says: "And further, that he, the said party of the first part, shall and will well and truly *pay* OR CAUSE to be paid to the said Alice S. Magee, for her maintenance and support, the just and full sum of five thousand (5,000) dollars yearly, each and every year so long as the said Alice shall remain his wife or *con-tinue his widow*, and she shall be deemed his wife until divorced by decree of courts of state of New York, to

be paid in equal monthly payments, the first whereof to be paid on the 9th day of November next."

The instrument also provides for the securing of such payments by directing the trustees under the will of John Magee then deceased to pay the said $5,000, &c., or so much as shall at any time remain unpaid. "And for securing the prompt and regular payments of said above mentioned sums, the party of the first part covenants and agrees * * * that he the said party of the first part will make and execute in due form of law a valid last will and testament, and keep the same at all times in force, in and by which he shall provide for the *fulfil-ment* on his part of this instrument, and make the payments herein provided for a lien and charge upon his estate."

The will of the testator was made November 9, 1870; to which he added a codicil dated October 30, 1871. He died April 25, 1873. The instrument of October 27, 1871, also contains a covenant and agreement on the part of Alice that she would "in *all things accept* and receive the provisions above made for her support in lieu of all claim, charge or incumbrance in any way or manner, or at any *time hereafter*, upon the party of the first part or upon his representatives, or upon his estate." The testator, in his said will of 9th November, 1870, directed his executors to set apart such sum as would produce $2,500 per year, and to pay $2,500 to his wife Alice during her life, or until she should again marry.

By the codicil of 30th October, 1871, the said annuity to the wife was revoked, and the codicil further provided, "and I hereby give and bequeath to my said wife the sum of $5,000 yearly, *to be paid* to her each and every year in monthly instalments, so long as she shall continue my widow."

At the time the codicil was prepared, the defendants claim certain declarations were made by the testator, as

to his object and purpose in executing such codicil. Nothing appears in the will upon the subject of such bequest, except the words above quoted. No provision is made in the will for the payment of said $5,000 into any bank in Syracuse to the credit of Alice.

*D. Pratt,* for the plaintiff.

*F. Kernan* and *Bradley & Kendall,* for the defendants.

HARDIN, J. The principal question in this case is whether the plaintiff, Alice S. Magee, is entitled to receive out of her late husband's estate $5,000 per year during her life or widowhood, or the sum of $10,000, in virtue of the instrument of settlement dated 27th October, 1871, and the codicil dated 30th of October, 1871.

In considering this question it must be assumed that the instrument of 27th of October, 1871, was valid, and such an one as the parties might lawfully enter into. They had actually separated, and were living apart at the time such agreement was made.

The agreement was therefore valid ; and it was competent for the parties to bind themselves to the stipulations found in that instrument. (*Carson* v. *Murray,* 3 *Paige,* 501, *and cases there cited.*)

The covenant to pay $500 per year, if said Alice "shall rent and keep a house on her own account and occupy the same as her residence" is contingent ; she must rent and keep house, before the covenant becomes operative, and nothing becomes due her by reason of such covenant to pay $500 towards the rent "during and while she shall so rent and keep house as aforesaid," until she rents and keeps house.

No proof was given to establish her right to receive any sum as accrued to her by reason of any breach of that covenant. Nothing was due her thereon at the time

Magee *v.* Magee.

the codicil was prepared and executed by the deceased husband.

But the covenant to pay an annuity of $5,000 was not contingent. It was absolute, and the liability to pay was fixed and settled the moment the instrument was executed, on the 27th day of October, 1871. The husband was under an operative covenant, and he and his estate were chargeable with the observance of the covenant, liable to be defeated only by her death, subsequent marriage or the divorce of the parties by a decree of the courts of the state of New York. Beyond this fixed and absolute covenant to pay $5,000 per year, the deceased husband stipulated that for the further securing the prompt and regular payments, he "will make and execute in due form of law a valid last will and testament, and keep the same at all times in force, in and by which he shall provide for the fulfilment on his part of this instrument, and make the payments therein provided for a lien and charge upon his estate." The obligation was thus cast upon the deceased to "*secure*" the covenant by a testamentary provision — to be by him made in his behalf "for the fulfilment on his part of this instrument." Suppose he had delayed making any testamentary provision "in fulfilment on his part," and had continued in life, and she had sought by action to enforce the obligation to make such testamentary provision, and had succeeded in obtaining a decree requiring such provision, and it has been made under such decree; could it be doubted that it was simply in aid of his covenant, and in execution of his obligation to thus provide?

Inasmuch as the provision in the codicil contains no reference to the agreement, and does not declare, in terms, the intention of the testator to comply with his covenant to further provide for the payment of the annuity of $5,000, it is proper to look at all the surrounding circumstances, the terms of the agreement, the

relations of the wife and husband at the time the agreement and codicil were made, the state of feeling then existing between them, to ascertain the intention of the testator at the time the codicil was made and executed. He had solemnly covenanted to provide for the fulfilment of the agreement on his part. The codicil, so far as the $5,000 was concerned, was in the direction of the fulfilment of the obligation he had made with Mrs. Magee. There are no facts or circumstances disclosed in the case indicative of an intention on his part to do better by her than he had covenanted to do, when settling the suit she had pending against him for separation and alimony, at the time it was made. He had made himself legally liable to pay her $5,000; he had created a liability which must rest upon his estate, in case of his death; and in the agreement he had stipulated to *secure* the payment of the $5,000 by a testamentary provision. He had not taken the agreement with him from Syracuse; he called for his will, and caused to be drawn a revocation of the former legacy to his wife made in November, 1870. He caused it to be drawn in language which was ample to *further secure* her $5,000 per year; it was put in form by the scrivener, and he then executed it, and it remained valid at his death in April, 1873.

No effort was made by his wife to have any other provision inserted in his will to further secure her the $5,000 covenanted to be provided for by will. Nor does it appear that she had any knowledge of the codicil, until after his death.

All these facts, circumstances, and the provisions of the contract, being considered, it is difficult to draw a presumption from the codicil thus made, that the testator intended to do more than he had, three days before, covenanted to do for his wife. There are no circumstances disclosed, of a state of feeling or mind that may be supposed to have influenced him to greater con-

sideration towards her on the 30th of October, 1871, than he possessed on the 27th of October, when he was only willing to bind himself and his estate with the payment of an annuity of $5,000.

In the case in 3 *Paige*, (*supra*,) the chancellor says : " The testator speaks of his wife in terms of great kindness and affection, notwithstanding the separation. I must *therefore* presume it was his intention to give her this as an *additional* allowance for her support, or as an inducement to her to relinquish her legal claim of dower, and thus to prevent any future litigation upon the question whether she was bound to elect between the annuity and her dower."

No such expressions of kindly feeling towards the wife are found in Magee's will, nor disclosed by the evidence, here. No need for any further inducement to his wife to relinquish her dower or other claim upon his estate.

All such relinquishment and release had been given him by his wife, three days before the codicil was prepared.

These circumstances, as well as others, distinguish this case from the principles and results laid down by the chancellor in *Carson* v. *Murray*, (*supra*.)

The circumstances and facts here warrant the presumption that the $5,000 named in the codicil was intended to comply with the agreement to provide for that sum, and that it was inserted in the codicil as an intended fulfilment of the agreement, and that it should be held a satisfaction of the agreement, *pro tanto*, if availed of by the wife. (*Mulheran's Executor* v. *Gillespie*, 12 *Wend.*, 349.)

The cases cited by the learned counsel for the plaintiff, in respect to slight inequalities in the two provisions, have not been overlooked. But the rule laid down by ALLEN, J., in *Hine* v. *Hine*, (39 *Barb.*, 507,) seems to be reasonable, and must be followed.

ALLEN, J., says, at page 510 : "If they are substantially the same, a small variance in the *time of payment*, or other trifling difference, will not vary the application of the rule." (*Story's Equity*, § 1110. 7 *Vesey*, 508.)

The proofs in this case fail to show an intent on the part of the testator to donate an additional sum — to be more liberal and generous with the wife than the terms of the agreement, and therefore it must be held that the testator was discharging his legal obligation in accordance with his sense of justice, when he raised the legacy from $2,500 to $5,000, and made the liability of his estate to his wife by the codicil equal to the fixed and absolute covenant. The omission to provide for the contingent liability to pay rental, leaves the agreement in that regard unaffected by the codicil ; and when the facts precedent to her rights to the rental covenant arise, she will be entitled to assert and enforce them under the agreement.

The declarations of the testator to Mr. Bush, the scrivener who drew the codicil, were offered by the defendants, to establish the intention of the testator at the time he made the codicil. They were objected to by the plaintiff, and the question as to their admissibility reserved.

The declarations of intent ought not to be received. (*Williams* v. *Crary*, 4 *Wend.*, 451.) SAVAGE, Ch. J., says : "Parol testimony is inadmissible for some purposes, but for others it is indispensable. It cannot be received to give a construction to the language of a will, but to prove circumstances from which the court may draw inferences or presumptions." The language of the codicil to the will in this case is clear ; no question arises as to the phraseology used ; no uncertain or ambiguous words are employed. The objection must therefore be sustained. But the facts and circumstances surrounding the parties, and the circumstances under which the codicil was executed were received, and must

be allowed to stand in the case ; and they may be looked into in determining what inferences and presumptions arise. (*Trustees* v. *Colgrove,* 4 *Hun,* 367, *and the cases cited in opinion of E. D. Smith, J.*) These views lead to the conclusion that the plaintiff is entitled to receive only $5,000 annuity, and she may have a provision inserted in the decree, if she shall serve a stipulation before entering the same, declaring her purpose to rely upon the codicil, or upon the agreement to enforce the payment of the annuity.

The decree must also preserve to the plaintiff the right to enforce the $500 rental covenant whenever she shall bring herself within its terms.

Inasmuch as the decree will settle her rights, and give her the right to enforce them, and establish the extent of the liability of the defendants as executors, the judgment may be entered by the plaintiff in accordance with the views herein expressed, with costs payable out of the estate in the hands of the executors, the defendants.

Judgment accordingly.