[No. 7,781. Department Two. — June 28, 1884.]

CHARLES R. BEARD, RESPONDENT, v. ANNE BEARD, APPELLANT.

CONTRACTS — FRAUDULENT CONSIDERATION — COLLUSIVE DIVORCE — FRAUD ON THE COURTS — PUBLIC POLICY. — Where a husband transferred certain real and personal property to his wife in consideration of promissory notes executed by her to him, secured by mortgage, and a promise by her to abandon her defense in an action of divorce then pending between them, and not resist or prevent or delay him in obtaining a decree of divorce, *held*, that the agreement of the wife with respect to the divorce proceedings was a fraud upon the court, and as it constituted an essential and inseparable part of the consideration, the entire transaction became tainted by fraud, and no action would lie to enforce the payment of the notes.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order directing the issuance of a writ of assistance.

The facts are stated in the opinion of the court.

*W. H. Webb, Jas. A. Wall,* and *W. M. R. Parker,* for Appellant.

*N. A. Dorn,* and *D. M. Delmas,* for Respondent.

SHARPSTEIN, J. — It appears by the findings that the plaintiff herein transferred real and personal property to the defendant, in consideration of her executing to him four notes, and securing the payment of the same by a mortgage, *and abandoning her defense in an action of divorce then pending between them, and doing nothing to resist, or prevent, or delay him in obtaining a decree of divorce therein.* He seeks in this action to recover the amount so secured. The defense is that the notes and mortgage are so tainted by fraud that a court ought not to enforce them. The agreement between the parties in the divorce proceeding was clearly collusive — " a secret agreement and co-operation for a fraudulent purpose." The decree obtained in pursuance of it was obtained through fraud on the court. If the court had been advised of that agreement it would not have granted the divorce. In *Barnes* v. *Barnes,* Law R. 1 Pro. & D. 505, a decree *nisi* had been rendered, when it was made to appear to the court that the petitioner had in substance said to his wife, the respondent: "If you don't oppose, I shall get a divorce cheaper than if you do;

therefore, keep quiet, and I will give you some money when the decree is obtained, and I will do no harm to the co-respondent." The decree was rescinded and the petition dismissed, Cresswell, J., remarking: "If that is not collusion, I do not know what is." It would not be "collusion" within the definition of that term in our Code. (Civ. Code, § 114.) But it would be none the less a fraud on the court, and in contravention of the policy of the law. The law-making power, for reasons which it is unnecessary here to state, has made a distinction between divorce and other cases, by declaring that, "no divorce can be granted upon the default of the defendant," etc. (Civ. Code, § 130.) Our reason for referring to this provision is not because we have any ground for doubting that the court complied fully and strictly with the law, but because the intention of the legislature to prevent the obtaining of divorces in the way the plaintiff obtained his, is clearly manifested. If a divorce could not be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties, could it be granted in a case in which the defendant, for a consideration, had stipulated not to make any opposition to the granting of it? Clearly not. And the objection is not obviated by the suggestion, that for anything which appears the defendant may have had no defense to the action in which the divorce was obtained. It appears that she filed an answer denying the allegations which constituted any ground for a divorce, and that she abanboned her defense.

Whether a divorce would have been granted if she had not, is quite immaterial. If it had been granted upon her default or admissions, or the uncorroborated testimony of the parties, or either of them, the question whether the application for a divorce might have been successfully resisted, would not have been considered.

We shall confine our investigation to what was done, and will not inquire what might have been the result of a fair trial of the issues. If on a *bona fide* trial the plaintiff could have established the allegations of his complaint, there was no occasion for his procuring an abandonment of the defense.

Do the facts bring this case within the rule that "a right of action cannot arise out of fraud, which applies, not only

where the contract is expressly illegal, but whenever it is opposed to public policy, or founded on an immoral consideration." (Broom's Legal Maxims, 732.)

. The object of the rule obviously is to discourage contracts of that kind, by refusing any legal assistance in enforcing them. In this case the plaintiff has secured by his fraud on the court a part of the consideration of his transfer of property to the defendant, and he now asks the same court to aid him in obtaining the other part. And it is insisted on his behalf that this is a meritorious claim. It is doubtless true that if any part of a contract is valid, and the sound part can be separated from the unsound, it may be enforced *pro tanto*, provided the good and bad do not both form parts of one transaction. In this case the agreement of the defendant to abandon her defense in the divorce case, and to give the notes and mortgage, were parts of one and the same transaction, and constituted the consideration of the transfer of property by the plaintiff to her. And we are warranted in assuming that the transfer would not have been made if the defendant had not agreed to abandon her said defense, as well as to execute the notes and mortgage.

As we view it, this case is clearly within the reason of the maxim, *ex turpi causa non oritur actio.* The entire transaction between the parties is tainted by fraud, and the plaintiff must content himself with so much of the benefit of it as he has already secured unchallenged.

The reason why the common law says such contracts are void is for the public good, and we think that the public good requires that this transaction should be held to be void in all its parts. It was a contract which contemplated the perpetration of a fraud upon a court of justice, and we think it the duty of courts to discountenance and discourage such transactions to the utmost limit of their power.

Judgment and order appealed from reversed, with directions to the court below to enter judgment in favor of the defendant on the findings.

THORNTON, J., and MYRICK J., concurred.

Hearing in Bank denied.