[Civ. No. 3267. Third Appellate District.—May 12, 1927.]

## SARAH M. BROWN, Respondent, v. GEORGE H. BROWN, Appellant.

[1] HUSBAND AND WIFE — CONTRACTS — SETTLEMENT OF PROPERTY RIGHTS—SUPPORT—ABSENCE OF STIPULATION FOR IMMEDIATE SEPARATION—EXISTENCE OF ACTUAL SEPARATION—VALIDITY OF AGREEMENT.—An agreement between husband and wife settling their property rights and providing for the wife's support is valid, notwithstanding that it does not contain a stipulation providing for the immediate separation of the parties, where they are actually separated at the time.

[2] ID.—PAYMENTS TO WIFE UNTIL DEATH—SECURITY—VALIDITY OF PROVISION.—The provision in such agreement that monthly payments to the wife are to be made until her death, and that to secure such payments a lien is created upon property conveyed to trustees, binding upon the heirs, executors, and assigns of the respective parties, does not render the agreement void.

[3] ID.—SUPPORT OF WIFE DURING LIFE — EFFECT OF SUBSEQUENT DIVORCE.—Provisions in a separation agreement for the support of the wife during life are not abrogated by a subsequent absolute divorce.

---

1. Agreements for separation and their validity, notes, 90 Am. Dec. 367; 83 Am. St. Rep. 859; 12 L. R. A. (N. S.) 148. See, also, 9 R. C. L. 524.

2. See 9 Cal. Jur. 825.

3. See 9 Cal. Jur. 828; 9 R. C. L. 536.

[4] ID.—DIVORCE—RECORDS OF ANOTHER ACTION—EVIDENCE—JUDICIAL NOTICE.—Courts cannot in one case take judicial notice of other records in another and different case; and in a divorce action the papers in another divorce action between the same parties form no part of the record in the former action, where they are not introduced in evidence.

[5] ID.—NAMING OF AGREEMENT—FINDINGS—SURPLUSAGE.—In a divorce action, any incorrect naming by the trial court in its findings of the separation agreement between the parties may be disregarded as surplusage, where the agreement itself is set forth, and partakes of both of the elements of a property settlement and of an agreement for support and maintenance, and combines in its term the provision of both sections 158 and 159 of the Civil Code, and is sustainable under either section, and is also sustainable as a trust agreement without the support of either section.

---

(1) 13 C. J., p. 465, n. 93; 15 C. J., p. 950, n. 59; 30 C. J., p. 1062, n. 60, 66; 31 C. J., p. 245, n. 2.   (2) 30 C. J., p. 1068, n. 96.   (3) 30 C. J., p. 1064, n. 19.   (4) 4 C. J., p. 675, n. 57; 23 C. J., p. 113, n. 40.   (5) 4 C. J., p. 1056, n. 79.

APPEAL from a judgment of the Superior Court of Placer County. J. B. Landis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dozier, Kimball & Dozier for Appellant.

F. P. Tuttle and Raglan Tuttle for Respondent.

PLUMMER, J.—In this action the appellant was awarded an interlocutory decree of divorce upon his cross-complaint alleging extreme cruelty. The decree of divorce is not attacked. The only questions presented for consideration relate to a certain agreement entered into between the parties after separation and prior to the institution of this action.

The appellant, in his cross-complaint, after alleging the grounds upon which the interlocutory decree in his favor was rendered, sets forth the agreement just mentioned and alleges that said agreement is void in that it does not con-

---

4. Judicial notice of proceedings in other causes, notes, 12 Ann. Cas. 537; Ann. Cas. 1913A, 140; Ann. Cas. 1915B, 651. See, also, 10 Cal. Jur. 728; 15 R. C. L. 1113.

tain the written consent of the parties thereto to an immediate or other separation; that the written agreement attempts and purports to provide for the permanent support of the plaintiff by the defendant and to release the defendant and all of his property from any and all claims of inheritance and of marriage claims of plaintiff thereto, save and except that said agreement purports to provide a lien for the enforcement of these provisions for the support of the plaintiff, etc.

There is no allegation in the cross-complaint in reference to the agreement setting forth that the same was entered into either through mistake, fraud, duress, undue influence, or without a full and complete understanding of all its terms and provisions, nor is there anything in the cross-complaint tending to show that there was not a complete meeting of the minds and intentions of the parties entering into the same. [1] The attack upon the agreement is based upon the allegations that it does not contain any stipulations providing for the immediate separation of the parties. The agreement itself, in so far as its provisions need to be considered, is in the following words and figures:

"This agreement, made and entered into this 19th day of March, 1923, by and between George H. Brown, the party of the first part, and Sarah M. Brown, the party of the second part,

"Witnesseth:

"Whereas, the parties hereto are living separate and apart and it is desirous that a settlement of property rights be had, it is mutually agreed as follows:

"That the party of the first part will pay to the party of the second part upon the execution of this agreement, the sum of $250.00, and the further sum of $150.00 per month from the date of this agreement, payable in advance, until the death of the party of the second part, said payments to be deposited in the Bank of Loomis, Loomis, County of Placer, State of California, each month to the credit of the party of the second part.

"It is further agreed and understood that the estate of the party of the first part shall be holden for said monthly payments until the death of the party of the second part; that to secure the payment of said $150.00 per month, the party of the first part has concurrently herewith, executed

a deed of trust on Lot 8 of the Light Tract, containing 21.80 acres, situated in the south half of section 7, Tp. 11 N., R. 8 east, M. D. B. & M., as per map or plan of said tract now on file in the office of the county recorder of the County of Placer, State of California; upon the death of the party of the second part hereunder, the trustees named in said deed of trust, to wit: Raglan Tuttle, W. J. Prewett and J. J. Callison, shall thereupon reconvey all title vested in them by and under said deed of trust, to the said party of the first part; . . .

"The party of the first part agrees to pay to Raglan Tuttle, the attorney for the party of the second part, the sum of $150.00 in full compensation for his services in representing the party of the second part, and will also pay the costs thus far incurred, amounting to $10.25.

"In consideration of the foregoing, the party of the second part agrees to join with the party of the first part in executing and placing of record an abandonment of homestead placed on the property of the party of the first part by the party of the second part on the first day of September, 1920, which homestead is found recorded in book 'E' of homesteads, at page 399, and the party of the second part does hereby agree that she will not in the future cause any of the property of the party of the first part to be impressed or subject to a homestead placed thereon by herself.

"The party of the second part does hereby waive, renounce, and relinquish all claim by reason of the marriage relation or by the laws of inheritance, to any and all property of the party of the first part, save and except as herein in this agreement provided, and she does hereby waive all right of inheritance to the property of the party of the first part in favor of the other heirs of the party of the first part;

"The party of the first part does hereby waive, renounce and relinquish all claim to the property of the party of the second part and does hereby waive, renounce and relinquish all right of inheritance to the property of the party of the second part, and does hereby waive all right of inheritance to the property of the party of the second part in favor of the other heirs of the party of the second part; . . .

"It is mutually agreed and understood that at the time of the execution of this agreement, that the parties hereto

have actually separated and that this is an agreement entered into after actual separation.

"This agreement shall bind the heirs, executors, and assigns of the parties to the same.

"In witness whereof, the parties hereto have hereunto set their hands this 19th day of March, 1923.

"GEORGE H. BROWN.

"SARAH M. BROWN.

"Approved by
   "RAGLAN TUTTLE,
       "Attorney for Sarah M. Brown.
"Approved by
   "PREWETT & CHAMBERLAIN,
       "Attorneys for George H. Brown."

This agreement was acknowledged by both of the parties thereto and on the same day filed for record by the appellant in the office of the county recorder of Placer County.

As a preliminary statement, it is set forth that the parties are living separate and apart and are desirous of settling their property rights, and in the conclusion it is further affirmed that the parties have actually separated and the agreement is entered into after actual separation.

Two sections of the Civil Code are involved in the consideration of this agreement, to wit: Section 158 of the Civil Code, which reads: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts"; and section 159 of the Civil Code, which provides as follows: "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation."

Basing his argument on the latter section, it is urged that the agreement is invalid and is an agreement prohibited by the terms of the section, in that to uphold such an agreement there must be a statement contained therein that the par-

ties have agreed to an immediate separation and that if the
separation has already taken place, then, and in that case,
the parties possess no power to enter into an agreement ad-
justing their property rights, or for the purpose of making
provision for the support of either of them. To support
this contention the cases of *Pereira* v. *Pereira,* 156 Cal. 1
[134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac.
488], *Rottman* v. *Rottman,* 55 Cal. App. 625 [204 Pac. 46],
*Sanguinetti* v. *Sanguinetti,* 51 Cal. App. 347 [196 Pac. 799],
*Marshall* v. *Marshall,* 196 Cal. 761 [239 Pac. 36], and a
few others are cited.

With only a casual reading, it might appear that these
cases establish the invalidity of the contract under considera-
tion, but upon careful consideration, we think that the facts
involved are so different that the ruling had in the principal
case, to wit, the case of *Pereira* v. *Pereira,* and followed by
the others, is distinguishable from that which should be had
in the case at bar. In the Pereira case, the agreement re-
lated to a future separation of the parties, to a future con-
templated action for divorce, and provided that if at a
subsequent time a divorce should be obtained, then, and in
that case, a certain sum of money should be paid according
to the terms of the agreement. The court refers to the two
sections of the Civil Code, which we have here set forth, the
one giving power either to the husband or wife to enter into
any agreement with the other respecting property which
they might do if not married, and the other concerning an
agreement arranging for an immediate separation and mak-
ing provision for support, etc., and then takes up the
crucial point involved in the agreement under considera-
tion, to wit: One relating to the payment of a certain sum
of money in the event of the future dissolution of the mar-
riage relation. The opinion then says: "The law does not
countenance such agreements," and quotes from former
opinions the following: "Any contract between the parties
having for its object the dissolution of the marriage contract,
or facilitating that result is void as *contra bonos mores,*"
citing *Loveren* v. *Loveren,* 106 Cal. 512 [39 Pac. 802], *Beard*
v. *Beard,* 65 Cal. 354 [4 Pac. 229], *Newman* v. *Freitas,* 129
Cal. 289 [50 L. R. A. 548, 61 Pac. 907], and then quotes
from *Seeley's Appeal,* 56 Conn. 206 [14 Atl. 291], a para-
graph from the opinion of the Connecticut supreme court

giving the reasons why a contract having for its purpose the future dissolution of the marriage relation must be held void. The Pereira case and those following the rule there laid down simply reiterate the well-established principle that the marriage relation can only be dissolved by a court of competent jurisdiction, and that agreements facilitating and having for their object the dissolution of the marriage relation are contrary to public policy. In the case of *Rottman* v. *Rottman,* 55 Cal. App. 624 [204 Pac. 46], we have an agreement entered into between husband and wife providing for a future contingency or, as therein stated, the husband was placed in the position that he might at any time abandon the wife or commit any breach of the marriage covenant with impunity, except that respondent could secure a decree of divorce from him. "By the contract he was granted complete immunity from any financial charge whatever, and that, too, whether he continued to live with his wife, either as a faithful or faithless husband, or whether he deserted her in whatever shameless manner; and he was equally freed from liability to suit for separate maintenance, however flagrant his conduct." Irrespective of section 159 of the Civil Code no other conclusion could have been reached except that the contract was void as against public policy.

In the case of *Sanguinetti* v. *Sanguinetti,* 51 Cal. App. 347 [196 Pac. 799], no question of separation was involved and the court held as follows: "In view of the provisions of sections 158 and 159 of the Civil Code, a husband or wife without entering into an agreement in writing for an immediate separation may convey to the other all title and interest in the community property or to the separate property of the other, and where a wife for a valuable consideration, and in the absence of any unfair advantage taken by the husband, waives and relinquishes to him all of her interest in the community property and in his separate property, she cannot thereafter declare a homestead on any of the property, although they continue to live together as husband and wife."

It is also pointed out in the Sanguinetti case that while section 159 reads a husband and wife cannot by any contract with each other alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the sup-

port of either of them and their children during separation, "It is to be observed, however, that the clause permitting them to alter their 'legal relations' in reference to property is not connected with or modified by the provision relating to an agreement for a separation." The court then says: "It might be a fair construction to hold that a contract for the support of either or of the children, in order to be valid, must be coupled with an agreement of separation, but to make this latter contingency a precedent condition for the validity of a contract for the disposition of the community property is to do violence to the language of the section. The law prescribes no such limitation. The plain terms of the statute authorize the husband or the wife to convey to the other all title and interest in either separate or community property." The court in that case further says: "As before indicated, in view of the duty imposed upon the husband by sections 174 and 175 of the Civil Code, there may be some doubt whether the waiver of support would be binding while the parties are living together, but that part of the agreement is not involved in this controversy, and it manifestly does not affect the legal integrity of the provisions in reference to the property."

There is nothing in this case, nor in any of the cases cited, which would lead to the conclusion that it was in the mind either of the supreme court or the district court of appeal to so interpret section 159 of the Civil Code as to prohibit parties who have actually separated from entering into an agreement adjusting their property rights and making provisions for the support of either. This question was not before the court in any of the cases cited, and, therefore, any language in any of the opinions which might lend force to such an argument, while worthy of consideration, is not binding upon this court, and where the question is directly presented, we must give the section that interpretation which we think the law impels and which we find supported in other jurisdictions, and in practically all the cases where the validity of the agreement has not turned on the question of being against public policy or contrary to good morals.

All of the cases cited having to do with contracts entered into between husband and wife in relation to their property rights and making provision for the support of either, or of the children of the parties which have been upheld, when

the question of good morals is involved, while the parties are living together, are those which contain an agreement for immediate separation, that is to say, an instantaneous, present act, without delay, or without any time intervening (31 C. J. 245). The immediate separation referred to in the section means an actual present fact, that is, something which has been completed and not an event to take place in the future. The whole theory of the law has been to prevent the execution and enforcement of agreements which have for their purpose the severance of the marriage relation in the future and not to invalidate agreements where the separation has already taken place or is an instant fact. Section 159 of the Civil Code does not by its terms, nor do we think by any reasonable intendment that can be given to the language there used, purport to prohibit the execution of agreements for separation or invalidate agreements entered into between husband and wife adjusting their property rights after the separation has taken place. If a contract providing for immediate separation is not invalid as contrary to good morals, we do not very well see how it can be legally concluded that a contract made after the actual separation is contrary either to good morals or to any provision of the Civil Code. Section 158 allows the parties to enter into agreements and contracts which they might, if unmarried, subject to the rules relating to confidential relations, etc. Section 159 of the Civil Code, in its prohibitory terms, seeks only to prevent the parties from altering their legal relations, to wit, the marital duties and obligations arising from the marriage contract, that is really what is aimed at, and then under certain conditions while that relationship is existing and there has been no separation, it is enacted that they may make agreements which may alter their legal relations as to property, provided the circumstances are such that the agreement is not one denounced by the statute as against public policy. The public policy involved is the maintenance of the institution of marriage. Thus, if the contract is made by parties already separated, it cannot be said to be against public policy when an agreement providing for an immediate discontinuance of that relation is permitted by the code. Irrespective of the interpretation that should be given to section 159 of the Civil Code, we are not without authority that agreements made

after separation settling property rights and making provision for support are valid. In the case of *Wells* v. *Stout,* 9 Cal. 480, Justice Field, in an elaborate opinion, after referring to the cases in other states and to a number of English authorities, thus states the conclusion of the court: "From these authorities, and others to the same effect which might be cited, it is clear that, by the settled law in the United States, such agreements are not invalid, because against sound principles of policy, and are upheld and enforced, when entered into through the intervention of a trustee, if followed by immediate separation, or, if separation has previously taken place."

In *Walker* v. *Beal,* 76 U. S. 743 [19 L. Ed. 814], the supreme court of the United States, considering an agreement settling property rights and providing for support, says: "Deeds of separation between husband and wife, for the separate maintenance of the wife, through the intervention of a trustee, are legal; and equity will enforce them if made as to a separation immediately to occur, or that has already taken place."

In *Galusha* v. *Galusha,* 116 N. Y. 635 [15 Am. St. Rep. 453, 6 L. R. A. 487, 22 N. E. 1114], the supreme court of the state of New York, in considering an agreement of separation entered into between husband and wife, held as follows: "Marriage is favored in the law, and, as a contract not to marry is against public policy and void, so, too, is a contract between husband and wife to be divorced, or in the happening of a future event to live apart. But, while a contract to separate in the future is void, it is now too well settled, both in England and this country, to admit of discussion, that after a separation has taken place a contract may be made, through the intervention of a trustee, which is effective to bind the husband to contribute the sums therein provided for the future support of the wife. 1 Bishop, Mar. and Div. 637, 650; *Carson* v. *Murray,* 3 Paige, 483; *Magee* v. *Magee,* 67 Barb. 487; *Pettit* v. *Pettit,* 107 N. Y. 677 [14 N. E. 500; 10 Cent. Rep. 265]; *Calkins* v. *Long,* 22 Barb. 97."

The case of *Marshall* v. *Marshall,* 46 Cal. App. Dec. 1, cited by appellant, cannot be considered as authority. A hearing in the supreme court was granted in that case. See 196 Cal. 761 [239 Pac. 36], where a different ruling was

had and an agreement for the support of the children was upheld. In 9 Ruling Case Law, 524, section 344, the text-writer in setting forth the law on the subject of agreements between husband and wife, states the rule in this language: "It may be stated generally, therefore, that such agreements, when they contemplate a separation *in praesenti* or the continuance of an existing separation are generally upheld by the courts both in England and in this country," citing a large number of cases, and, further, "there is no objection to the separation agreement on the grounds of public policy if at the time there was an actual separation caused by the misconduct of the husband. Still, it is generally held immaterial whether the separation has already taken place, or is to take place immediately after the agreement, if an immediate and continued separation was contemplated when the contract was executed, and it did take place immediately," citing authorities. Only one conclusion can be reached from the authorities cited, to wit: That if the separation has already taken place, it stands upon the same footing as where the agreement provides for the separation to take place *in praesenti.*

In the case at bar, in its provisions, the agreement under consideration is analogous to the first California case which we have cited, in that a trust has been created for the purpose to effectuate the agreement and accomplish the purposes intended thereby, and the rule is uniform that such agreements are valid.

The agreement in question was entered into by the mutual consent of the parties, it was approved by the attorneys representing the respective parties, and by virtue of section 160 of the Civil Code is adequately supported as to consideration. It is there said: "The mutual consent of the parties is a sufficient consideration for such an agreement as is mentioned in the last section," referring to section 159, Civil Code.

The agreement also contains waivers on the part of the wife, which would constitute a valid consideration.

[2] It is further objected that the agreement is void in that it purports to continue in full force and effect until the death of the respondent. This question, however, is decided adversely to the contention of the appellant in the case of *Higgins* v. *Higgins,* 121 Cal. 487 [66 Am. St. Rep.

57, 53 Pac. 1081], where it was held that an almost identical clause as the one contained in the agreement under consideration was valid. We quote the clause from the Higgins case: "The payment of said annuity to be a binding and continuing obligation upon the said H. M. Higgins and upon his executors, administrators, and assigns, and to constitute a lien upon his estate during his lifetime, and after his death during the lifetime of the said Emily J. Higgins." The legal effect of this clause is no different from that contained in the agreement under consideration which creates a lien upon the property conveyed to the trustee, binding upon the heirs, executors, and assigns of the respective parties.

In the case of *McCahan* v. *McCahan*, 47 Cal. App. 173 [190 Pac. 458], the agreement held invalid provided for paying the costs of a divorce action. In *Beard* v. *Beard*, 65 Cal. 354 [4 Pac. 229], the subject of the divorce was controlling in the decision. Likewise in *Newman* v. *Freitas*, 129 Cal. 289 [50 L. R. A. 548, 61 Pac. 907], and *Loveren* v. *Loveren*, 106 Cal. 512 [39 Pac. 801], the subject of divorce was involved. These cases were cited by appellant but are not applicable here.

[3] It is also urged that the subsequent divorce voids a previous agreement settling property rights or providing for support. This, however, is not supported by the authorities. Provisions in the separation agreement for the support of the wife during life are not abrogated by a subsequent absolute divorce. 9 Ruling Case Law, 536, section 356. The authorities there cited are numerous, and we do not need to set them forth herein.

There is nothing in the case of *Sargent* v. *Sargent*, 106 Cal. 541 [39 Pac. 931], which abrogates an agreement providing for the maintenance of either party until death. In that case divorce was one of the contingencies under which by the terms of the contract its provisions were to terminate. The conditions being different, the agreement being different in its terms, the conclusion there reached necessarily was different from the conclusion that must be here had upon a contract differing in its terms as to its time of continuance.

[4] Upon the hearing of this cause on appeal the appellant produced and asked to have admitted as a part of the

record, under a suggestion of a diminution thereof, copies of pleadings in a case numbered 6895, entitled *Sarah M. Brown, Plaintiff,* v. *George H. Brown, Defendant,* filed and dismissed in the office of the county clerk of Placer County, on the theory that the files in that proceeding were taken judicial notice of by the trial court in this action. In this, however, appellant is in error, as courts do not take judicial notice of the papers and files of other actions. As stated in *Sewell* v. *Price,* 164 Cal. 265 [128 Pac. 407], while courts take judicial notice of their own records, the rule is limited to proceedings in the same case. It is well settled that courts cannot in one case take judicial notice of other records in another and different case. (16 Cyc. 918; *People* v. *De La Guerra,* 24 Cal. 73; *Lake Merced Water Co.* v. *Cowles,* 31 Cal. 214; *Ralphs* v. *Hensler,* 97 Cal. 297 [32 Pac. 243].) In order to have brought the proceedings in a former case to the attention of the trial court in this case, it would have been necessary to introduce in evidence the files and pleadings sought to be admitted here as a part of the record. This not having been done, such papers constitute no part of the record in this, a distinct and separate action. The mere fact that the names are the same does not make the actions any the less separate and distinct. Being made no part of the record in the trial below, such papers cannot be admitted here.

[5] The appellant further contends that there is a conflict between finding number eight in that it sets forth that in the agreement the appellant covenants to pay the respondent $150 per month for her maintenance and support, and finding number ten in that in the latter finding the agreement is set forth and shows that it is a property settlement and not an agreement for maintenance and support. A reading of the agreement, we think, very clearly leads to the conclusion that the agreement partakes of both the elements of a property settlement and of an agreement for support and maintenance, and combines in its terms the provisions of both sections 158 and 159 of the Civil Code, and by the authorities which we have cited is sustainable under either section, and by a large number of the authorities sustainable as a trust agreement without the support of either section. The objection in this particular we think more technical than meritorious, because whatever name the

trial court may have given to the agreement in one of its findings, the setting forth of the agreement itself would show its full purpose without the purpose being named by the trial court, and if incorrectly named, such incorrect naming would be disregarded as surplusage.

The judgment of the trial court is affirmed.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 11, 1927.