APONTE & SOBRINO, Plaintiff and Appellant, *v.* HEIRS OF JOSÉ PÉREZ LLERA, Defendants and Appellees.

No. 6515.   Argued March 1, 1935.—Decided May 7, 1935.

*M. Cuzmán Texidor* for appellant.   *T. Bernardini Palés* for appellees.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The commercial partnership of Aponte & Sobrino brought an action of debt against the heirs of José Pérez Llera, to wit, his natural children and his mother Isabel Llera, and

Jenaro Cautiño Insúa, executor of the will of the deceased José Pérez Llera.

In order to secure the effectiveness of any judgment that might be rendered in said action, the plaintiff partnership attached a certain number of cattle. The said partnership requested the sale of the attached property as it considered that the same was susceptible to damage and depreciation, due to the change of pasture and method of care, to the prejudice of all the interested parties.

The defendants verbally opposed this motion at the hearing and alleged, among other things, that the assets of the estate of José Pérez Llera, including the attached cattle, were in *custodia legis,* under the administration of the executor or administrator Jenaro Cautiño Insúa, appointed by the District Court of Guayama, as appears from case No. 9844; and that in addition the said cattle were subject to an order of the said court directing that it be sold by the executor to pay the creditors of the estate. The defendants orally stated that since the property was in *custodia legis* it could not be attached, and maintained that the attachment was null and void for these reasons.

After the parties were heard, the court denied the motion requesting the sale of the cattle, declared the attachment levied to be null and void, and ordered that the property be returned to the judicial administrator Jenaro Cautiño Insúa.

The plaintiff firm took an appeal from that decision, and contended that the court erred in vacating the attachment levied, since the parties appeared in court only to discuss whether or not the sale of the cattle was proper, without giving the plaintiffs an opportunity to prove that the said property was not in *custodia legis.* It is urged that the court erred in rendering its decision on the basis of facts which were not submitted in evidence, and in holding that the property attached was in *custodia legis.*

■■ We agree with the opinion of the lower court, that property in the hands of a judicial administrator is in *custodia legis*. 12 R.C.L. 814, paragraph 45; *Brewer* v. *Hutton*, 30 S.E. 81; *McCoy* v. *Flynn*, 151 N.W. 465; *Maxwell* v. *Greene*, 172 S.E. 147, and 6 C.J. 210. But, has it been shown in this case that the cattle attached is in this situation? No evidence was offered in support of the verbal statement of the defendant as to the existence of an executor or judicial administrator. The lower court held that the property attached "is actually under the executorship and judicial administration of Mr. Jenaro Cautiño, named as executor by the testator in his will and appointed judicial administrator of the assets of the estate by the court." The lower court seems to make this assertion on the premise that it is unnecessary to offer evidence of these facts of which it has judicial knowledge.

■■ A court of justice cannot take judicial notice of an action brought before it for the purpose of applying such notice to another case being heard before the same court. This is the rule generally established, although it is not so invariably inflexible that it does not admit exceptions in certain cases determined and recognized by the decisions. For example, where the parties in the two proceedings are substantially the same and the result of one action determines the result of the other, the court takes judicial notice of the proceedings and judgments in the previous action instead of requiring the parties to resort to other proceedings to produce the same effect. *Butler* v. *Eaton*, 141 U.S. 240. The principle generally prevailing is that the decision of a cause must depend upon the evidence introduced. If the court should take judicial notice of certain facts which should have been presented as evidence, then the opposing party has no way to meet such evidence, which becomes conclusive against him, while in reality, if it had been presented he might have been in a position to meet and controvert it. Note to *Murphy* v. *Citizens' Bank*, 12 Ann. Cas. 537.

In *National Bank* v. *Bryant,* 13 Bush, (Ky.) 419, the court expressed itself as follows:

"This and every other court will take judicial notice of its own records as far as they pertain to the case in hand, but will not take notice in deciding one case of what may be contained in the record of another and distinct case, unless it be brought to the attention of the court by being made a part of the record of the case under consideration."

In a note which appears at the foot of the case of *Murphy* v. *Citizens' Bank, supra,* the case of *Daniel* v. *Bellamy,* 91 N.C. 78, is cited, and it is said that in that case it appears that the proceeding was brought in the probate court to require an executor to present his accounts as such. While the said proceeding was pending, the probate of the will was revoked by the same court, and the appellate court, commenting on the action of the probate court, which took judicial notice of the revocation of the probate of the will, expressed itself thus:

"The court of probate erred in supposing that because the probate of the will had been revoked in that court, it could take judicial notice of and act upon such revocation in the absence of any pleading on the part of the defendants, setting it up as a defense. The revocation of the probate of the will was done in a proceeding in no way connected with this action, however much it might affect it when properly pleaded. The court must not only have knowledge of a defense a party might make, but it must have knowledge of it well pleaded. The defendants, in order to avail themselves of the revocation, could only do so by properly pleading it, just as they would any other defense they might have the right to make. It might be that the plaintiffs would deny the revocation of the will, or its validity. They might desire to demur or reply to the amended answer. This they could not do, upon a mere suggestion of a defense upon the part of the defendants, of which the court happened to have personal knowledge, obtained through another action or proceeding in the same court."

This doctrine is supported by the most recent decisions. In *Brown* v. *Brown,* 83 Cal. App. 74, 256 Pac. 595, the court said:

"As stated in *Sewell* v. *Price,* 164 Cal. 265 (128 Pac. 407), while courts take judicial notice of their own records, the rule is limited to proceeding in the same case. It is well settled that courts cannot in one case take judicial notice of other records in another and different case. (Citations). In order to have brought the proceedings in a former case to the attention of the trial court in this case, it would have been necessary to introduce in evidence the files and pleadings sought to be admitted here as a part of the record. This not having been done, such papers constitute no part of the record in this, a distinct and separate action."

See also the cases of *Plum* v. *Indian Valley Bank,* 4 P. (2d) 543; *Giannopulos* v. *Chachas,* 257 Pac. 619; *Schubeler* v. *Lilly,* 155 N.E. 699; *Paridy* v. *Caterpillar Tractor Co.,* 48 F. (2d) 166; *Morse* v. *Lewis,* 54 F. (2d) 1027; *Atlas Land Corporation* v. *Norman,* 156 So. 885.

This is not a case which falls within the exceptions to the general rule. The lower court, therefore, could not take judicial notice that the property attached was in *custodia legis.*

The defendants argue that the plaintiff firm admits in the complaint that Jenaro Cautiño Insúa is the executor of José Pérez Llera, alleging that payment was demanded by the plaintiff of the said executor who, up to the present time, has not paid the amount claimed. It is true that this allegation is made in the complaint. But that does not mean that because an executor has been appointed, the property of the estate is under judicial administration. The executor spoken of in our civil law is not in the same position generally prevailing in the American legal system. Here, as there, the executor derives his authority from the will of the testator, from the testament which names him; but with us, when the testator does not especially determine his powers, these are limited by section 824 of the Civil Code, according to which he is authorized only:

"1. To dispose and pay the suffrages, and funeral expenses of the testator in accordance with the provisions made by him in his will and, in their absence, according to the customs of the town.

"2. To pay, with the knowledge and consent of the heir, the cash legacies.

"3. To carefully see to the execution of the other provisions of the will and maintain, when just, its validity in and out of court.

"4. To take the necessary precautions for the preservation and custody of the property, with the intervention of the heirs who may be present.".

Commenting on section 902 of the Spanish Civil Code, equivalent to section 824 of our Code, Manresa says:

"The executor watches over the faithful execution of the testamentary provisions, the fulfillment of which is not directly placed in his charge. But, note well, however important this function and that of the defense of the will may be, the executor, according to this subdivision of section 902, does not represent the estate. If the will is attacked, he has the personality to be a party defendant and to defend its validity or that of any of its clauses; if any provision is violated or is not executed, he has the personality to sue the heirs themselves and to force them to fulfill and respect whatever the testator ordered; but it is not encumbent upon him either to manage the testate at all, or to pay debts, or to satisfy any but cash legacies, or to make partitions, or anything else not expressly determined by subdivisions 3 and 4 of section 902, unless the testator has given him power to do so." 6 Manresa, 749.

In the instant case we know only that the plaintiffs have admitted that Jenaro Cautiño was named executor of José Pérez Llera and that is not sufficient to place the property in *custodia legis*.

The defendant cites the case of *Mead* v. *Dapena, et al.*, 32 P.R.R. 373, according to which, where the custodian of attached goods, and through him the levying officer of the court, permit the goods to leave his possession by virtue of a subsequent attachment, the preference acquired by the party first attaching is extinguished, and it is alleged that the marshal of the court attached the cattle and placed it under the custody of Luis María Sánchez, custodian for the plaintiff firm. The decision cited is based on the case of *Oronoz & Co.* v. *Alvarez*, 23 P.R.R. 497, in which it is held

that "the authorities generally hold that to preserve an attachment the officer levying it must retain his control and power of taking immediate possession of the goods and if he fails to do this the attachment will be regarded as abandoned . . . If the legal possession of attached goods and chattels is lost, the attachment which is dependent upon such possession is dissolved." It seems that it is sought to apply this decision by analogy to property attached in the hands of a judicial administrator. As we said before, there is no evidence in the record to show that the said property is under judicial administration, and therefore it is unnecessary to decide the question raised at this time.

The judgment appealed from must be reversed and the case remanded to the lower court for further proceedings in accordance with the terms of this opinion.