Aponte & Sobrino, demandante y apelante, *v.* Sucesión de José Pérez Llera, etc., demandados y apelados.

No. 6515.—*Sometido:* Marzo 1, 1935. *Resuelto:* Mayo 7, 1935.

*M. Guzmán Texidor,* abogado de la apelante; *T. Bernardini Palés,* abogado de los apelados.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

La sociedad mercantil Aponte & Sobrino inició una acción en cobro de dinero contra la sucesión de José Pérez Llera, compuesta de sus hijos naturales, de la madre del causante Isabel Llera, y de Jenaro Cautiño Insúa, en su carácter de albacea testamentario del finado José Pérez Llera.

Para asegurar la efectividad de la sentencia que pudiera recaer en dicho pleito la sociedad demandante embargó cierta cantidad de ganado vacuno. Solicitó dicha sociedad la venta de los bienes embargados, por entender que los mismos eran susceptibles de desmejorar y bajar de precio, debido al cambio de pasto y método de cuido, lo que habría de redundar en perjuicio de todas las partes interesadas.

A esta moción se opusieron verbalmente en el acto de la vista los demandados, alegando, entre otras razones, que los bienes que constituyen la herencia relicta por don José Pérez Llera, entre los cuales se encuentra el ganado embargado, están en *custodia legis* bajo la administración del albacea o administrador don Jenaro Cautiño Insúa, nombrado por la Corte de Distrito de Guayama, según aparece del caso No. 9844, cuyo ganado está sujeto además a una orden de la misma corte disponiendo se venda por el albacea para pagar a los acreedores de la herencia. Alegaron verbalmente los demandados que estando los bienes en *custodia legis* no podían ser embargados y sostuvieron, en virtud de estas razones, la nulidad del embargo.

Oídas las partes, la corte declaró sin lugar la moción solicitando la venta de ganado y declaró nulo y sin ningún valor el embargo practicado, ordenando que los bienes fuesen reintegrados al administrador judicial Sr. Jenaro Cautiño Insúa.

De esta resolución apeló la firma demandante, alegando que la corte cometió error al anular el embargo practicado, cuando las partes comparecieron a la corte solamente a discutir la procedencia o no de la venta del ganado, sin dar oportunidad alguna a los demandantes de probar que los referidos bienes no estaban en *custodia legis*. Se alega que la corte erró al dictar su resolución fundándose en hechos que no fueron materia de prueba y al declarar que los bienes embargados estaban en *custodia legis*.

■■ Opinamos, con la corte inferior, que los bienes en

poder de un administrador judicial se encuentran en *custodia legis.* 12 R.C.L. 814, párrafo 45; *Brewer* v. *Hutton,* 30 S. E. 81; *McCoy* v. *Flynn,* 151 N. W. 465; *Maxwell* v. *Greene,* 172 S. E. 147, y 6 C. J. 210. Pero, ¿se ha demostrado en este caso que el ganado embargado se encuentra en estas condiciones? No se ofreció prueba alguna en apoyo de la manifestación verbal de la demandada sobre la existencia de un albacea o administrador judicial. La corte inferior declaró que los bienes embargados ''se encuentran actualmente bajo el albaceazgo y administración judicial del Sr. don Jenaro Cautiño, nombrado albacea en su testamento por el causante y administrador judicial de los bienes relictos, por la corte.'' Al hacer esta afirmación la corte inferior parece partir de la base de que es innecesario ofrecer prueba sobre estos hechos, de los cuales tiene conocimiento judicial.

 Una corte de justicia no puede tomar conocimiento judicial de una causa seguida ante ella para aplicar ese conocimiento a otra causa que se esté ventilando en el mismo tribunal. Ésta es la regla generalmente establecida, aunque no con tan invariable inflexibilidad que no admita excepciones en ciertos casos señalados y reconocidos por la jurisprudencia. Por ejemplo cuando las partes en los dos procedimientos son sustancialmente las mismas y el resultado de una causa determina el resultado de la otra, la corte toma conocimiento judicial de los procedimientos y sentencias en la acción anterior en vez de obligar a las partes a acudir a otros procedimientos para producir el mismo efecto. *Butler* v. *Eaton,* 141 U. S. 240. El principio que prevalece generalmente es que la decisión de una causa debe depender de la evidencia producida. Si la corte tomase conocimiento judicial de ciertos hechos que pudieran ser objeto de prueba, entonces la parte contraria no tendría medios de rebatir esa evidencia, que sería definitiva para ella, cuando la verdad es que de ser producida estaría en condiciones de controvertirla y quizás de rebatirla victoriosamente. *Murphy* v. *Citizens' Bank,* 12 Ann. Cas. 537.

En *National Bank* v. *Bryant*, 13 Bush. (Ky.) 419, la corte se expresó así:

"Esta corte, así como las demás cortes, toma conocimiento judicial de sus propios records, en tanto en cuanto pertenecen al caso que está juzgando. Pero al decidir un caso no toma tal conocimiento de lo que pueda contenerse en el récord de otro caso distinto, a menos que se traiga a la atención de la corte, haciéndolo parte del récord del caso bajo consideración."

En una nota que aparece al calce del caso *Murphy* v. *Citizens' Bank*, supra, se cita el caso de *Daniel* v. *Bellamy*, 91 N. C. 78, diciendo que según se desprende de este caso, el procedimiento fué iniciado en la corte de testamentaría para obligar a un albacea a presentar las cuentas de su cargo. Mientras dicho procedimiento estaba pendiente, la aprobación del testamento fué revocada por el mismo tribunal, y la corte de apelaciones, comentando la actuación de la corte de testamentaría, que tomó conocimiento judicial de la revocación de la orden aprobando el testamento, se expresó así:

"La corte de testamentaría cometió error al suponer que debido a haberse revocado por ella la orden aprobando el testamento, ella podía tomar conocimiento judicial del acto de tal revocación en ausencia de la alegación correspondiente por parte de los demandados en que planteaban tal cuestión como defensa. La revocación de la orden aprobando el testamento se hizo en un procedimiento que en forma alguna estaba relacionado con esta acción, no importa lo mucho que pudiera afectarlo al suscitarse la cuestión debidamente. La corte no solamente debe tener conocimiento de la defensa que una parte pueda plantear, sino que debe tener conocimiento de la cuestión al serle suscitada en debida forma. Para aprovecharse de la revocación los demandados tan sólo podían hacerlo valiéndose de la alegación correspondiente, de igual modo que hubieran tenido que hacerlo al plantear cualquiera otra defensa a que tuvieran derecho. Podría suceder que los demandantes negaran que el testamento fué revocado, o la validez del mismo. Tal vez quisieran excepcionar o replicar a la contestación enmendada. No tenían derecho a hacer esto, al sugerir los demandados meramente una defensa, de la cual por casualidad la corte tenía conocimiento personal, obtenido en otro recurso o procedimiento ante la misma corte."

Esta jurisprudencia está sostenida por las más recientes decisiones. En *Brown* v. *Brown*, 83 Cal. App. 74, 256 P. 595, la corte se expresó así:

" . . . . Según dijimos en Sewell v. Price, 164 Cal. 265, 128 P. 407, si bien las cortes toman conocimiento judicial de sus propios records, la regla está limitada a procedimientos en la misma cuestión. Es una doctrina firmemente establecida que las cortes no pueden tomar conocimiento judicial de otros records en un caso distinto. (Citas.) Con el fin de haber traído los procedimientos en un caso anterior a la atención de la corte sentenciadora en este caso habría sido necesario ofrecer como prueba los autos, para que fuesen admitidos como una parte del récord. No habiéndose hecho esto, tales documentos no constituyen parte del récord en esta causa, que es una distinta y separada acción."

Véanse también los casos de *Plum* v. *Indian Valley Bank*, 4 P. (2d) 543; *Giannopulos* v. *Chachas*, 257 P. 618; *Schubeler* v. *Lilly*, 155 N. E. 699; *Paridy* v. *Caterpillar Tractor Co.*, 48 F. (2d) 166; *Morse* v. *Lewis*, 54 F. (2d) 1027; *Atlas Land Corporation* v. *Norman*, 156 So. 885.

No es éste un caso comprendido dentro de las excepciones a la regla general. La corte inferior, por lo tanto, no pudo tomar conocimiento judicial de que los bienes embargados estuviesen en *custodia legis*.

Arguyen los demandados que la firma demandante admite en la demanda que Jenaro Cautiño Insúa es albacea de don José Pérez Llera, alegando que dicho albacea fué requerido de pago por la demandante, sin que hasta la fecha haya satisfecho la suma reclamada. Es verdad que existe esta alegación en la demanda. Pero ello no quiere decir que por el hecho de haberse designado un albacea los bienes de la herencia se encuentren en administración judicial. El albacea de que habla nuestro derecho civil no está colocado en las mismas condiciones que generalmente prevalecen dentro del sistema legal americano. Aquí como allá el albacea deriva su autoridad de la voluntad del testador, del testamento que lo nombre; pero entre nosotros cuando el testador no

determina especialmente sus facultades, éstas están limitadas por el artículo 824 del Código Civil, según el cual únicamente podrá:

"1. Disponer y pagar los sufragios y el funeral del testador con arreglo a lo dispuesto por él en su testamento; y en su defecto, según la costumbre del pueblo.

"2. Satisfacer los legados que consistan en metálico, con el conocimiento y beneplácito del heredero.

"3. Vigilar sobre la ejecución de todo lo demás ordenado en el testamento, y sostener, siendo justo, su validez en juicio y fuera de él.

"4. Tomar las precauciones necesarias para la conservación y custodia de los bienes con intervención de los herederos presentes."

Comentando el artículo 902 del Código Civil español, equivalente al artículo 824 de nuestro código, se expresa así el Sr. Manresa:

"El albacea vigila por la fiel ejecución de las disposiciones testamentarias, cuyo cumplimiento no le está directamente encomendado. Pero, obsérvese bien, por muy importante que sea esta función y la de la defensa del testamento, el albacea, con arreglo a este número del art. 902, no representa la herencia. Si se ataca al testamento, él tiene personalidad para ser demandado y defender su validez o la de alguna de sus cláusulas; si se quebranta alguna disposición o no se ejecuta, él tiene personalidad para demandar a los mismos herederos y compelerles a la ejecución y al respeto de cuanto el testador ordenó; mas ni le compete administrar en absoluto, ni pagar deudas, ni satisfacer más legados que los que consistan en metálico, ni practicar las operaciones particionales, ni nada más que lo que taxativamente determinan los números 3º. y 4º. del art. 902, a no ser que el testador le hubiere facultado para ello." 6 Manresa, 749.

En el presente caso únicamente sabemos que los demandantes han aceptado que Jenaro Cautiño fué nombrado albacea de don José Pérez Llera y esto no es bastante para colocar los bienes en *custodia legis.*

Se cita por la demandada el caso de *Mead* v. *Dapena,* 32 D.P.R. 402, según el cual cuando el depositario de bienes muebles embargados, y por éste el funcionario ejecutivo de la corte, permite que los bienes salgan de su posesión al

hacerse un segundo embargo, queda extinguida la preferencia adquirida por quien embargó primeramente, y se alega que el márshal de la corte embargó el ganado y lo colocó bajo la custodia de Luis María Sánchez, depositario de la firma demandante. La decisión citada se basa en el caso de *Oronoz & Co.* v. *Álvarez*, 23 D.P.R. 536, donde se sostiene que "las autoridades generalmente mantienen el criterio de que para que un embargo pueda quedar protegido, el funcionario que lo practica debe retener el poder y facultad de entrar en inmediata posesión de los bienes, y si dejare de hacer esto, se considerará que el embargo ha sido abandonado. .... Si se pierde la posesión legal de los bienes y objetos personales que han sido embargados, el embargo que está sujeto a dicha posesión queda disuelto." Parece que pretende aplicarse por analogía esta jurisprudencia a bienes embargados en poder de un administrador judicial. Como ya dijimos antes, no hay prueba alguna en los autos de que los referidos bienes se encuentren en administración judicial, y por lo tanto es innecesario resolver en esta ocasión la cuestión planteada.

*Debe revocarse la resolución apelada y devolverse el caso a la corte inferior para ulteriores procedimientos de acuerdo con los términos de esta opinión.*